IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| **DONJON-SMIT, LLC** <br><br> VS. <br><br> **ADMIRAL KARL L. SCHULTZ, CAPTAIN JOHN W. REED, COMMANDER NORM C. WITT, and COMMANDER MATTHEW J. BAER, IN THEIR OFFICIAL CAPACITY AS OFFICERS OF THE UNITED STATES COAST GUARD** | CIVIL ACTION NO. _____ |

**PLAINTIFF DONJON-SMIT, LLC'S
VERIFIED COMPLAINT, REQUEST FOR INJUNCTIVE RELIEF, AND
<u>WRIT OF MANDAMUS</u>**

Plaintiff Donjon-SMIT, LLC ("Donjon-SMIT") files this Verified Complaint, Writ of Mandamus, and Request for Injunctive Relief (the "Complaint") against Defendants Admiral Karl L. Schultz, Captain John W. Reed, Commander Norm C. Witt, and Commander Matthew J. Baer (collectively, the "Defendants") in their official capacity as officers of the United States Coast Guard ("Coast Guard"), and in support thereof state as follows:

**INTRODUCTION**

1.      Plaintiff Donjon-SMIT, LLC ("Donjon-SMIT") files this Complaint along with an accompanying Motion for Injunctive Relief.[1] to both prevent an almost certain environmental disaster in Port of Brunswick, St. Simons Sound caused by capsizing of the GOLDEN RAY and to require the United States Coast Guard to follow the requirements of the Oil Pollution Act of 1990 ("OPA 90"). The Coast Guard and the Federal On-Scene Coordinator, in direct violation of the OPA 90 and the corresponding regulations, are permitting an extremely high-risk salvage plan

---

[1] Donjon-SMIT's Motion for Injunctive Relief and Brief in Support Thereof is being filed simultaneously with this Complaint.

1

to move forward that has failed on two prior occasions involving similar shipwrecks. The vessel owner/responsible party and the Coast Guard are directly subverting the statutory and regulatory requirements of OPA 90. Donjon-SMIT has not only warned the Coast Guard about the imminent environmental risks but has also requested that the Coast Guard follow the requirements for OPA 90. Despite this and Donjon-SMIT's multiple requests for information from the Coast Guard regarding its decision, the Coast Guard has refused to respond instead unlawfully delegating its sole decision-making authority to the GOLDEN RAY'S owner/responsible party. This has left Donjon-SMIT with no other option but to seek court intervention in the best interest of the proper enforcement of OPA 90 and to avert an imminent environmental catastrophe.

## PARTIES

2.     Donjon-SMIT is a maritime salvage, firefighting, and lightering company that is registered as a limited liability company in the State of Delaware.

3.     Defendant Admiral Karl L. Schultz ("Admiral Schultz") is the Commandant of the United States Coast Guard ("Coast Guard"). The Coast Guard is a military branch and federal agency within DHS. Admiral Schultz may be served with process at the National Command Center of the Coast Guard, US Coast Guard Stop 7318, 2703 Martin Luther King Jr Ave SE, Washington, DC 20032. Pursuant to Federal Rule of Civil Procedure 4(i), a copy of the summons and of this complaint will also be sent by registered or certified mail to the United States Attorney's Office for the Southern District of Georgia at 22 Barnard Street, Suite 300 Savannah, Georgia 31401, and to the Attorney General's Office at 950 Pennsylvania Avenue, NW Washington, DC 20530-0001.

4.     Defendant Captain John W. Reed ("Captain Reed") is a Coast Guard Captain and Commander of the Coast Guard Sector Charleston. Captain Reed may be served with process at

2

196 Tradd Street, Charleston, SC 29401. Pursuant to Federal Rule of Civil Procedure 4(i), a copy of the summons and of this complaint will also be sent by registered or certified mail to the United States Attorney's Office for the Southern District of Georgia at 22 Barnard Street, Suite 300 Savannah, Georgia 31401, and to the Attorney General's Office at 950 Pennsylvania Avenue, NW Washington, DC 20530-0001.

5. Commander Norm C. Witt ("Commander Witt") is a Coast Guard Commander, the Commander of the Coast Guard Marine Safety Unit Savannah, and the Federal On-Scene Coordinator ("FOSC") in the State of Georgia. Commander Witt may be served with process at 1297 N. Lightning Road, Savannah, GA 31408. Pursuant to Federal Rule of Civil Procedure 4(i), a copy of the summons and of this complaint will also be sent by registered or certified mail to the United States Attorney's Office for the Southern District of Georgia at 22 Barnard Street, Suite 300 Savannah, Georgia 31401, and to the United States Attorney General's Office at 950 Pennsylvania Avenue, NW Washington, DC 20530-0001.

6. Commander Matthew J. Baer ("Commander Baer") is a Coast Guard Commander who at certain relevant times acted as the FOSC. Commander Baer may be served with process at 196 Tradd Street, Charleston, SC 29401. Pursuant to Federal Rule of Civil Procedure 4(i), a copy of the summons and of this complaint will also be sent by registered or certified mail to the United States Attorney's Office for the Southern District of Georgia at 22 Barnard Street, Suite 300 Savannah, Georgia 31401, and to the Attorney General's Office at 950 Pennsylvania Avenue, NW Washington, DC 20530-0001.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction pursuant to the following statutes:

  a. 28 U.S.C. § 1331, which provides district courts with original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States;

  b. 28 U.S.C § 1346, which provides district courts with original jurisdiction over any civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department;

  c. 33 U.S.C. § 1321(e)(2) of the Clean Water Act, which provides district courts with jurisdiction to grant any relief under § 1321(e) that the public interest and the equities of the case may require.

8. Venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(B).

9. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## BACKGROUND

**A. The GOLDEN RAY Capsizes in St. Simons Sound.**

10. On September 8, 2019, the GOLDEN RAY, a 200-metre-long car carrier vessel, capsized in the Port of Brunswick, St. Simons Sound. The capsizing of the GOLDEN RAY is the largest cargo shipwreck in U.S. coastal waters since the Exxon Valdez. At the time of the accident, the GOLDEN RAY was carrying approximately 4,200 automobiles and over twenty crew members. Though all crew members have been rescued, the automobiles remain trapped within the cargo hold of the GOLDEN RAY posing a "***substantial threat of a discharge***" in the navigable waters of St. Simons Sound if not properly removed.[2] In short, the cars need to be safely removed to avoid environmental disaster.

---

[2] A true and correct copy of Commander Witt's November 8, 2019 USCG Administrative Order 01-19 Amendment 1 is attached hereto as **Exhibit 1**.



Photograph of the capsized GOLDEN RAY vessel in St. Simons Sound

**B.     Congress Requires Non-Tank Vessel Response Plans Under OPA 90.**

11.     In response to the devastating impacts of the Exxon Valdez disaster, Congress passed OPA 90 amending the Clean Water Act.  OPA 90 was designed to address a wide-range of problems associated with preventing, responding to, and paying for oil pollution incidents in the navigable waters of the United States.  Importantly, OPA 90 greatly increased federal oversight of maritime oil transportation and significantly reduced the amount of discretion that responsible parties had in determining how to best respond to environmental emergencies of their own making.

12.     Before OPA 90, a vessel owner responsible for an oil spill ironically also wielded significant control over how the spill would be cleaned up. In order to shift decision-making authority regarding oil spill response efforts back into the hands of public officials, OPA 90 requires owners of non-tank vessels carrying oil to submit to the Coast Guard a Non-Tank Vessel Response Plan ("NTVRP") detailing how they will respond to large discharges. 33 C.F.R. § 155.5010.  Depending on the capacity of the vessel, the NTVRP must demonstrate that the vessel

5

owner has contracted with resource providers to provide certain services in case of an emergency, including salvage, emergency lightering, and marine firefighting. 33 C.F.R. § 155.5035. Once a plan is approved, a vessel owner ***may not*** deviate from the NTVRP without additional approval from the President or the FOSC. 33 U.S.C.A. § 1321(c)(3)(B) (emphasis added). Moreover, the FOSC may only approve a deviation from the NTVRP under "*exceptional circumstances*." 33 C.F.R. § 155.4032 (emphasis added). Section 155.4032 provides:

> Use of resource providers not listed in the VRP. If another resource provider, not listed in the approved plan for the specific service required, is to be contracted for a specific response, justification for the selection of that resource provider needs to be provided to, and approved by, the FOSC. Only under *exceptional circumstances* will the FOSC authorize deviation from the resource provider listed in the approved vessel response plan in instances where that would best affect a more successful response."

33 C.F.R. § 155.4032(a) (emphasis added).

According to the Coast Guard's own administrative guidance published in 2009, its NTVRP requirement was implemented "to ensure that an incident be responded to quickly and ***without the need for contract negotiations during an actual emergency***." Salvage and Marine Firefighting Requirements; *Vessel Response Plans for Oil*, 73 FR 80618-01. Clearly, the term "exceptional circumstances" was intended to rarely allow for deviations from an approved NTVRP.[3]

---

[3] Though 33 C.F.R. § 155.4032 has not yet been interpreted by a court of law, courts have interpreted use of the term ***exceptional circumstances*** in other federal rules and regulations as setting a high threshold that should rarely be met. For example, under Supreme Court Rule 20, an "extraordinary writ" such as a writ of mandamus or habeas corpus may only be granted upon a showing of "exceptional circumstances [that] warrant the exercise of the Court's discretionary powers[.]" U.S. Sup. Ct. R. 20. Tellingly, though thousands of such petitions have been filed, the Court has not granted an extraordinary writ of habeas corpus since 1925, *see Ex parte Grossman*, 267 U.S. 87 (1925), or a writ of mandamus since 1962. *See Fong Foo v. United States*, 369 U.S. 141 (1962). Similarly, under Section 1229a of the Immigration and Nationality Act, a judge's removal order made in absentia may only be rescinded under "exceptional circumstances". 8 U.S.C. § 1229a(e)(1). This language has been interpreted to "set[] a high bar that 'will be met in only rare cases.'" *Jimenez-Castro v. Sessions*, 750 F. App'x 406, 408–09 (6th Cir. 2018) (quoting *Kaweesa v. Gonzales*, 450 F.3d 62, 68 (1st Cir. 2006)); *see also Herbert v. Ashcroft*, 325 F.3d 68, 72 (1st Cir. 2003). Likewise, pursuant to 18 U.S.C.A. § 3145(c), which governs the review of detention or release orders in criminal proceedings, a judicial officer may only order the release of a defendant held under a detention order if "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C.A. § 3145. Here again,

### C. The GOLDEN RAY's NTVRP Under OPA 90.

13. GL NV24 Shipping Inc. ("Owner") is the owner of the GOLDEN RAY. As the owner of a non-tank vessel carrying oil, Owner was required to prepare an NTVRP. Pursuant to an agreement signed on September 20, 2017, Donjon-SMIT was designated as the approved salvage and marine firefighter ("SMFF") provider under the GOLDEN RAY NTVRP for nineteen different salvage and marine firefighting services. Donjon-SMIT is a highly-experienced marine salvage and casualty response provider which currently holds active response agreements with approximately 7,000 vessels worldwide. In fact, Donjon-SMIT is the largest OPA 90 provider in the world.

### D. Donjon-SMIT Provides Life Saving Emergency Services on the GOLDEN RAY and Limits Environmental Harm.

14. Within hours of the GOLDEN RAY capsizing, Donjon-SMIT provided emergency salvage, firefighting, and damage stability services as the approved SMFF under the GOLDEN RAY NTVRP. Donjon-SMIT assisted in the successful rescue of four trapped crewmen. Donjon-SMIT further stabilized the worksite by laying down a blanket of rock surrounding the ship, and by late October, Donjon-SMIT successfully removed most of the approximately 300,000 gallons of bunker fuel from the GOLDEN RAY's twenty-four fuel tanks. Donjon-SMIT performed everything it was asked to do. By all accounts, Donjon-SMIT's emergency services not only saved lives, but significantly limited the environmental harm caused by the GOLDEN RAY's capsizing. This is the exact type of response Congress envisioned under OPA 90 and its NTVRPs.

---

what qualifies as *exceptional* has been narrowly defined. *See United States v. McGillivray*, No. 2:11 CR 22-7, 2012 WL 137409, at *2 (quotations omitted) (W.D.N.C. Jan. 18, 2012) ("Courts generally have defined 'exceptional reasons' as circumstances which are clearly out of the ordinary, uncommon, or rare."); *United States v. Lea*, 360 F.3d 401, 403 (2d Cir.2004) (quoting *United States v. DiSomma*, 951 F.2d 494, 497 *2d Cir.1991) ("Exceptional circumstances exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'").



Donjon-SMIT laying down rocks to stabilize the GOLDEN RAY

**E.      Donjon-SMIT Submits a Proven Salvage Plan Focused on Mitigating the Environmental Risks and Avoiding the Main Navigation Channel to the Port of Brunswick.**

15.    After securing the GOLDEN RAY, Donjon-SMIT was ready to move forward with removing the wreck under the GOLDEN RAY's NTVRP.  On November 5, 2019, Donjon-SMIT submitted a salvage plan proposal to Owner and its representatives.[4]  Under Donjon-SMIT's plan, the GOLDEN RAY would be cut and removed in small sections weighing approximately 600 tons each, allowing for a controlled removal of the over 4,000 automobiles still inside the vessel while minimizing stress on the damaged hull and reducing the significant risk of inadvertent discharges into St. Simons Sound.

16.    This approach had been successfully employed in a similar shipwreck salvage operation for the REIJIN that also involved the safe removal of automobiles that had posed a

---

[4]  A true and correct copy of Donjon-SMIT's November 5, 2020 salvage plan is attached hereto as **Exhibit 2.**

8

significant environmental risk. Additionally, Donjon-SMIT proposed establishing a small 4.6-acre protective perimeter around the GOLDEN RAY that not only mitigates environmental risks but also avoids the main navigation channel to the Port of Brunswick. Donjon-SMIT was prepared to move forward with its plan in November of 2019 and remains ready willing and able to implement its plan today.

### F.     The Owner subverts OPA 90 and Requests that Donjon-SMIT be replaced by Another Salvage Company.

17.     Owner and its representatives rejected Donjon-SMIT's proposal out of hand, citing their unproven preference that the vessel be removed in much larger sections of approximately 4,000 tons. Rather than affording Donjon-SMIT an opportunity to advocate for its safer small section removal plan, Commander Witt instead allowed Owner to place the wreck removal project out for tender to third-party contractors who were not part of the NTVRP in violation of OPA 90 and its regulations. Further, Commander Witt permitted Owner to solicit proposals based on a "fixed-price" rate rather than on the "cost-plus" terms used in the GOLDEN RAY'S NTVRP. The change to a "fixed price" structure is alarming it that it appears that the Owner may be attempting to limit its exposure. Simply put, Commander Witt allowed Owner to conduct the very bidding process that OPA 90 was designed to prevent, wasting valuable time that Donjon-SMIT could have used to begin work on the GOLDEN RAY while at the same time allowing the Owner to potentially limit it exposure.

18.     Soon thereafter, Donjon-SMIT learned that a third-party company named T&T Salvage ("T&T") had submitted its own proposal to Owner and was permitted to present its plan to the entire Unified Command, including Commander Witt and other Coast Guard officials. Donjon-SMIT, which again was the pre-contracted SMFF resource provider, was never afforded

a similar meeting with Unified Command to discuss its own proposal and its serious concerns with T&T's unproven, high risk plan.

      **G.**      **T&T's High-Risk Plan Will Likely Result in an Environmental Disaster in the Waters of St. Simons Sound.**

19.     T&T proposed a high risk, "large section" removal whereby eight sections of the ship, weighing approximately 4,000 tons each, would be removed and transported by barge to the Gulf of Mexico. Similar large section removal processes have been used on capsized car carrier vessels twice before without success--once on the TRICOLOR in 2003, and again on the BALTIC ACE in 2014. In both instances, after removal of several large sections, the remaining sections collapsed, releasing additional pollutants into the surrounding waters. Additionally, T&T's proposed plan would require the construction of a thirty-one acre environmental protection barrier in St. Simons Sound that would interfere with the navigation channel, increasing the potential for another accident. Further, because each removed section would be even larger than the barge itself, there would be significant risk of the sections falling off the barge during transport to the Gulf. T&T's proposal is also significantly more expensive than Donjon-SMIT's.

      **H.**      **The Coast Guard Permitted an Unlawful Deviation from GOLDEN RAY's NTVRP in Violation of OPA 90 and Its Regulations.**

20.     On December 19, 2019, Owner, without reference to any "exceptional circumstances," submitted a request to Commander Witt to deviate from the GOLDEN RAY's NTVRP and replace Donjon-SMIT with T&T as the salvage and marine fighting (SMFF) provider going forward. Again, and for undisclosed reasons, Donjon-SMIT was shut out of any discussions with Owner, Commander Witt, and the Coast Guard regarding the selection process. Two days later, on December 21, 2019 Commander Witt, in direct violation of OPA 90 and its corresponding regulation approved Owner's request to deviate from the GOLDEN RAY NTVRP without any

justification or reference to any "exceptional circumstances" as required by 33 C.F.R. § 155.4032. This is the exact conduct that OPA 90 was designed to prohibit.

21.     Astonishingly, Donjon-SMIT was removed as the SMFF services provider on the GOLDEN RAY for *each of the nineteen different services* for which Donjon-SMIT was pre-contracted under the GOLDEN RAY NTVRP. Despite multiple inquiries from Donjon-SMIT, Commander Witt refused to articulate his reasoning for approving Owner's deviation request and has never explained why Donjon-SMIT was removed for all nineteen services.

**I.      The Coast Guard Unlawfully Delegated Its Sole Decision-Making Authority to the GOLDEN RAY'S Owner.**

22.     On December 22nd, Paul Hankins, Donjon's Vice President for Salvage Operations, emailed Commander Witt to explain Donjon-SMIT's concerns with the T&T plan and to request a meeting to discuss the Commander's unlawful deviation approval.[5] In response, Commander Witt, who as the designated FOSC is supposed to be sole decision-maker regarding any deviations from the NTVRP, tellingly "defer[red] to the Owner's representatives" regarding any meetings to discuss the deviation.[6] This is an unlawful delegation of the decision-making authority that Congress sought to prevent under OPA 90.

23.     By (1) permitting Owner to circumvent use of its pre-contracted NTVRP service provider in favor of an open bidding process, (2) not affording Donjon-SMIT any opportunity to explain its salvage removal plan or address any potential concerns, and (3) never providing any

---

[5] As outlined in the detailed email, the T&T Plan is a high risk plan that costs substantially more than the Donjon-SMIT plan and employs a removal method that has previously failed on two other occasions resulting in more environmental harm. Moreover, T&T's approach appears to be that if its plan does not work, there is plenty of money to then try the Donjon-SMIT's approach. The Coast Guard's rejection of the safer, proven, and less expensive approach outlined in the Donjon-SMIT plan is arbitrary, at best, and increases the likelihood of greater environmental harm.

[6] A true and correct copy of the email exchange between Donjon-SMIT and the Coast Guard is attached hereto as **Exhibit 3**.

justification for their approval of Owner's deviation request, much less a finding of "exceptional circumstances," Defendants have subverted the very purpose of OPA 90 and effectively delegated their decision-making authority back to those responsible for the disaster at issue. Moreover, Defendants have deprived Donjon-SMIT of its contractual agreement with Owner to provide SMFF services in addition to causing damage to Donjon-SMIT's reputation that will directly harm its ability to contract in the future.

24. Implementation of T&T's large section removal plan is now imminent. On February 5, 2020, the Unified Command announced that construction of the environmental protection barrier will begin approximately one week from the date of this motion.[7] Soon thereafter, T&T will commence cutting and removing sections of the GOLDEN RAY. Time is of the essence if Defendants' blatant violations of Donjon-SMIT's statutory and constitutional rights are to be remedied.[8]

## CAUSES OF ACTION

### A.   Count One:  Request for Injunctive Relief.

25. Donjon-SMIT re-alleges and incorporates the above allegations as if fully set forth herein.

26. Pursuant to Federal Rule of Civil Procedure 65, Donjon-SMIT seeks entry of a temporary restraining order, preliminary injunction, and permanent injunction to avoid immediate and irreparably loss, injury, and damage. As set out in Donjon-SMIT's Motion for Injunctive Relief and Brief in Support Thereof filed simultaneously with this Complaint, Donjon-SMIT has shown substantial likelihood of success on the merits, that irreparable injury will be suffered if the

---

[7] A true and correct copy of the Unified Command Press Release is attached hereto as **Exhibit 4**.

[8] *See* Donjon-SMIT's Motion for Injunctive Relief and Brief in Support Thereof filed simultaneously with this Complaint.

relief is not granted, that the threatened injury outweighs the harm the relief would inflict on the Coast Guard, and that entry of the relief would serve the public interest.

27. The Coast Guard's unlawful actions in violation of OPA 90 will not only cause immediate and irreparable injury to Donjon-SMIT's constitutional rights, Donjon-SMIT's contractual relationship with the Owner, and Donjon-SMIT's reputation and ability to act as an OPA 90 salvage provider going forward, but poses a significant risk of another substantial discharge in the navigable waters of St. Simons Sound ending in a significantly great environmental disaster.

### B. Count Two: Violation of OPA 90 and Request for Judicial Review Under the Administrative Procedure Act.

28. Donjon-SMIT re-alleges and incorporates the above allegations as if fully set forth herein.

29. In direct violation of OPA 90 and its corresponding regulations, Defendants approved the Owner's request to deviate from the GOLDEN RAY NTVRP without any justification or reference to any "exceptional circumstances" as required by 33 C.F.R. § 155.4032.

30. Defendants have subverted the very purpose of OPA 90 and effectively delegated their decision-making authority back to those responsible for the disaster at issue.

31. Under 5 U.S.C.A. § 706, a district court may "hold unlawful and set aside agency action, findings, and conclusions found to be-- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] (D) without observance of procedure required by law[.]" 5 U.S.C.A. § 706(2).

32. Defendants are willfully failing to abide by 33 C.F.R. § 155.4032, which states that a FOSC may only approve the use of a resource provider not listed in the NTVRP "under exceptional circumstances" where such approval "would best affect a more successful response."

33. Additionally, Defendants are willfully failing to abide by 33 U.S.C.A. § 1321(c)(3)(B), which states that a FOSC may only deviate from the applicable NTVRP if he determines that the "deviation from the NTVRP would provide for a more expeditious or effective response to the spill or mitigation of its environmental effects."

34. Instead, Defendants, acting arbitrarily and capriciously, in excess of their statutory authority, and without observance of procedure required by law, approved Owner's deviation from the NTVRP.

35. Donjon-SMIT respectfully requests this Court, through its authority under 5 U.S.C.A. § 706, hold unlawful and set aside Defendants' approval of Owner's deviation from the NTVRP.

    **C.**    **Count Three:  Violation of Procedural and Substantive Due Process.**

36. Donjon-SMIT re-alleges and incorporates the above allegations as if fully set forth herein.

37. 42 U.S.C. § 1983 provides a cause of action against any person "who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"

38. Under the Fifth Amendment of the U.S. Constitution, no person shall "be deprived of life, liberty, or property, without due process of law[.]"

39. Defendants, acting in their official capacity, intentionally violated Donjon-SMIT's procedural and substantive due process rights under § 1983 and the Constitution.

40. Specifically, 33 C.F.R. § 155.4032 states that a FOSC may only approve the use of a resource provider not listed in the NTVRP "*under exceptional circumstances*" where such approval "would best affect a more successful response."

41. Instead, Defendants approved Owner's deviation from the NTVRP without any justification, much less a finding of "*exceptional circumstances*", and without providing Donjon-SMIT any opportunity to be heard.

42. Defendants thereby violated Donjon-SMIT's procedural and substantive due process rights and deprived Donjon-SMIT of its contractual agreement with Owner to provide SMFF services in addition to causing damage to Donjon-SMIT's reputation that will directly harm its ability to contract in the future.

### D. Count Four: Declaratory Judgment.

43. Donjon-SMIT re-alleges and incorporates the above allegations as if fully set forth herein.

44. Donjon-SMIT seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Fed R. Civ. P. 57, and as provided for by the Administrative Procedure Act under 5 U.S.C. § 704.

45. Donjon-SMIT seeks this Court's determination that:

   a. Defendants' actions with respect to their approval of the deviation from the NTVRP were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

   b. Defendants' actions with respect to their approval of the deviation from the NTVRP were contrary to Donjon-SMIT's constitutional rights and Defendants' constitutional powers or privileges;

  c. Defendants' actions with respect to their approval of the deviation from the NTVRP were in excess of their statutory jurisdiction, authority, and/or limitations; and

  d. Defendants' actions with respect to their approval of the deviation from the NTVRP were without observation or procedure as required by law.

46. This Court has the authority to grant declaratory relief under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 as an actual controversy exists between the parties as to Defendants' actions and Donjon-SMIT's rights with respect to Defendants' approval of Owner's NTVRP deviation request.

47. Donjon-SMIT respectfully requests this Court enter an Order determining Defendants' actions exceeded the scope of their authority, etc., as specifically outlined above.

## WRIT OF MANDAMUS

48. Donjon-SMIT re-alleges and incorporates the above allegations as if fully set forth herein.

49. Under 28 U.S.C. § 1361, "[t]he district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency therefor to perform a duty owed to the plaintiff."

50. The purpose of 28 U.S.C. § 1361 is to prevent federal officials from acting outside the permissible scope of their discretion, and it seeks to prevent such abuse by giving federal courts the authority to compel federal officials to perform acts required of them or, conversely, to refrain from acts which they are not authorized to perform.

51. Here, Defendants failed to abide by 33 C.F.R. § 155.4032, which states that a FOSC may only approve the use of a resource provider not listed in the NTVRP "under exceptional circumstances" where such approval "would best affect a more successful response."

52. Additionally, Defendants failed to abide by 33 U.S.C.A. § 1321(c)(3)(B), which states that a FOSC may only deviate from the applicable NTVRP if he determines that the

"deviation from the NTVRP would provide for a more expeditious or effective response to the spill or mitigation of its environmental effects."

53. Instead, Defendants, without justification, without evidence of "exceptional circumstances," and acting arbitrarily, capriciously and in bad faith, approved Owner's deviation from the NTVRP.

54. Donjon-SMIT has a clear right to relief that is sought in this Complaint, and there is no other adequate remedy available to Donjon-SMIT.

55. Donjon-SMIT respectfully requests this Court enter a writ of mandamus compelling Defendants to reverse its approval of Owner's deviation from the NTVRP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Donjon-SMIT, LLC respectfully requests that this Court:

   a. Enter a temporary restraining order, preliminary injunction, and permanent injunction against the Coast Guard as requested herein.

   b. Hold unlawful and set aside Defendants' actions under the Administrative Procedure Act as requested herein;

   c. Enter judgment against Defendants for violating Donjon-SMIT's procedural and substantive due process rights;

   d. Enter a declaratory judgment against Defendants as requested herein;

   e. Enter a writ of mandamus against Defendants as requested herein;

   f. All such other relief at law or in equity as this Court deems appropriate.


[Signatures on following page]

DATED:  February 13, 2020

                                          Respectfully submitted,

                                          **TAYLOR, ODACHOWSKI, SCHMIDT & CROSSLAND, LLC**

                                          /s/ Joseph R. Odachowski
                                          **Joseph R. Odachowski**
                                          Georgia State Bar No. 549470
                                          300 Oak Street, Suite 200
                                          St. Simons Island, GA 31522
                                          (912) 634-0955 – Telephone
                                          (912) 638-9739 – Facsimile
                                          jodachowski@tosclaw.com

                                          **ATTORNEYS FOR PLAINTIFF DONJON-SMIT, LLC**

**OF COUNSEL:**
**CLARK HILL PLC**

/s/ Garney Griggs
**Garney Griggs**
Texas State Bar No. 08491000
**Clifford Bowie Husted**
Texas State Bar No. 00796803
**Gregorio Flores**
Texas State Bar No. 24116367
909 Fannin, Suite 2300
Houston, TX  77010
(713) 951-5600 – Telephone
(713) 951-5660 – Facsimile
ggriggs@clarkhill.com
hustedc@clarkhill.com
gflores@clarkhill.com

**ATTORNEYS FOR PLAINTIFF DONJON-SMIT, LLC**