# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

FILED U.S. DISTRICT COURT BRUNSWICK DIV. 2020 FEB 21 AM 11: 31 CLERK _____ SO. DIST. OF GA.

| | |
|---|---|
| DONJON-SMIT, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ADMIRAL KARL L. SCHULTZ, CAPTAIN JOHN W. REED, COMMANDER MATTHEW J. BAER, and COMMANDER NORM C. WITT, in their official capacity as Officers of the UNITED STATES COAST GUARD,<br><br>    Defendants. | 2:20-CV-011 |

## ORDER

In the ordinary case, Counsel learns of a Court's questions during a hearing. This is no ordinary case.

In the interest of maximizing time and focus at the hearing scheduled for February 25, 2020, the attorneys are hereby informed of the initial questions the Court is considering as set forth below. To the extent possible, Counsel should submit their answers to these questions and **provide specific reference to the witness(es) or document(s) expected to substantiate such answers during the hearing.** Any such submissions should be filed by 5:00 p.m. on February 24, 2020.

   1. How does the Large Section Demolition plan (or plan put forth by T&T Salvage) provide for a "more expeditious or

effective response to the spill or mitigation of its environmental effects" than the Small Section Demolition plan put forth by Plaintiff?

2. Who, specifically, made the decision to select T&T?

3. Who, specifically, was consulted in making the decision to select T&T?

4. Who, specifically, had input into the decision to select T&T?

5. What evidence exists showing that the vessel owner, as opposed to the Federal On-Scene Coordinator, made the decision to select T&T?

6. What specific facts and circumstances led to selecting T&T?

7. Exactly what exceptional circumstances justify deviation from the Non-Tank Vessel Response Plan?

8. What process was used to discover and analyze any exceptional circumstances?

9. If exceptional circumstances are found, is there any provision of law mandating they be communicated to the approved salvage and marine firefighter?

10. What is the proper definition of "exceptional circumstances" in the context of this case?

11. The Complaint references nineteen different salvage services for which Plaintiff is the approved salvage

provider. Describe all nineteen. Which of the nineteen are implicated in this motion?

12. Did Unified Command meet with Plaintiff and T&T? Why or why not? Did they have to meet?

13. What specific evidence exists that Defendants did or did not act in bad faith?

14. What specific evidence exists that Defendants did or did not act arbitrarily and capriciously in deviating from the NTVRP?

15. What evidence exists that Defendants exceeded their statutory authority? Specifically, which provision or subpart of any statute(s) was exceeded and how?

16. Does the Coast Guard have any standard procedures for determining whether a request to deviate from the NTVRP satisfies the criteria set forth in C.F.R. § 155.4032? What are those procedures? Were any such procedures applied in this case?

17. Does any provision of the Oil Pollution Act of 1990 or its implementing regulations guarantee Plaintiff a right to be heard before a deviation determination is made?

18. Does the U.S. Constitution guarantee Plaintiff a right to be heard before a deviation determination is made? What Supreme Court holding best supports your conclusion?

19. How much bunker fuel has been removed from the Golden Ray thus far? How much remains? What is the best current estimate of how much fuel, oil, and other contaminants have already entered the St. Simons Sound as a result of this incident?

20. Is there any dispute that the longer the Golden Ray remains in the Sound, the greater the environmental and navigational hazards become?

21. Is there any dispute that an important salvage goal is to complete the task prior to the onset of hurricane season?

22. Which method, Large Section Demolition or Small Section Demolition, presents the greatest risk of environmental damage? Why?

23. Which method, Large Section Demolition or Small Section Demolition, presents the greatest risk of navigational hazards? Why?

24. What method was used in assessing the relative risks?

25. If the Large Section Demolition method fails, what is the worst-case scenario in terms of environmental impact and cost to the public?

26. If the Small Section Demolition method fails, what is the worst-case scenario in terms of environmental impact and cost to the public?

AO 72A
(Rev. 8/82)

27. If Plaintiff were to begin February 26, 2020, what is the best estimate of completion time and cost?

28. If Plaintiff were to prevail today, what is the best estimate of completion time and cost?

29. If T&T continues, what is the best estimate of completion time and cost?

30. According to the Complaint, the Large Section Demolition method has only ever failed while the Small Section Demolition method has worked in a similar setting. Why was a method selected that has always failed?

31. What was the environmental impact of the Tricolor and Baltic Ace failures, respectively? Is the same risk present here?

32. What are the estimated chances that the Large Section Demolition method will succeed? What are the estimated chances that the Small Section Demolition method will succeed?

33. Have there been any Small Section Demolition method failures? If so, what was the environmental impact? Is the same risk present here?

34. Is there any way to remove some of the automobiles independently of the sections?

5

AO 72A
(Rev. 8/82)

35. What is the extent of any interference with the navigational channel occasioned by the thirty-one acre environmental protection barrier?

36. What is the cost of the Large Section Demolition? What is the cost of the Small Section Demolition?

37. What is the limit of the owner's exposure should further environmental damage ensue?

38. What role did salvage cost to the owner play in the deviation?

39. Why was T&T permitted to proceed utilizing a different billing method?

40. Explain the exact parameters of the competing billing methods: cost-plus and fixed price. Why was one deemed more desirable?

41. Is the owner responsible for all costs under either method, successful or not?

42. Why did Plaintiff wait fifty-three days to seek an injunction? Is it possible for Plaintiff to complete the work prior to the onset of hurricane season?

43. What evidence is there that T&T is "planning a failure" as alleged in Plaintiff's filings?

44. Is the interior of the Golden Ray failing? If so, does this daily increase the risk of environmental pollutants being released?

45. Why should the public have confidence that the Federal On-Scene Coordinator has selected the best method and that it will work?

**SO ORDERED,** this 21st day of February, 2020.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA