**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| **DONJON-SMIT, LLC,** | |
| **Plaintiff,** | |
| **vs.** | |
| **ADMIRAL KARL L. SCHULTZ, CAPTAIN JOHN W. REED, COMMANDER NORM C. WITT, and COMMANDER MATTHEW J. BAER, in their official capacity as Officers of the UNITED STATES COAST GUARD,** | **CIVIL ACTION NO:** **2:20-CV-00011-LGW-BWC** |
| **Defendants.** | |

## DONJON-SMIT, LLC'S REPLY TO DEFENDANTS' PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

COMES NOW the Plaintiff, **DonJon-SMIT, LLC**, and responds to Defendants' Proposed Findings of Facts and Conclusions of Law, as follows:

**I.    STIPULATED FACTS:**  Plaintiff has reviewed Defendants' Proposed Findings of Facts and, subject to Plaintiff's own proposed findings of fact which Plaintiff contends sets forth the findings of fact this Court should accept, Plaintiff is willing to accept and stipulate to the following facts as proposed by Defendants:

Plaintiff stipulates to the following of Defendants' proposed findings of facts:  1, 2, 3, 5, 6, 7, 10, 12, 13, 14, 15, 16, 19, 20, 21, 22, 32, 33, 35, 47, 48, 50, 51, 54, 55, 56, 69, 71

Plaintiff stipulates to the following paragraphs, but taking exception, as follows:

- Paragraph 4:  Plaintiff stipulates the Paragraph 4; except that Plaintiff Donjon-SMIT, LLC was the sole and primary designated SMFF for all 19 SMFF services under the GOLDEN RAY'S approved NTVRP.

1

- Paragraph 8:  Plaintiff stipulates to Paragraph 8; except the NTVRP in this matter designated Plaintiff Donjon-SMIT, LLC as the sole and primary designated SMFF for all 19 SMFF services and any resource provider must be approved by the USCG.

- Paragraph 44:  Plaintiff stipulates to Paragraph 44; except that while Plaintiff is, in fact, still listed as a SMFF resource provider in the NTVRP, the FOSC allowed a deviation to the NTVRP such that T&T is now providing all remaining SMFF services for Owner, thereby displacing DJS from any remaining SMFF services under the NTVRP.

- Paragraph .52:  Plaintiff stipulates to Paragraph 52; except the deviation request effectively allowed Owner to deviate from the NTVRP and to displace DJS, and to allow T&T to provide all nineteen SMFF services.

- In response to Defendants' stipulated fact #9 and #69, Plaintiff agrees that the FOSC approved the deviation request, however, disagrees that factually T&T should have been authorized by FOSC as an SMFF resource provider, not to mention the SMFF that would take over the remaining SMFF services.

For SMFF services, the contract between the RP and SMFF provider must be accompanied by a "funding agreement" consisting of pricing rates for time and materials that might be necessary for those services.   Moreover, since actual SMFF needs are unknown beforehand, fixed lump-sum pricing is inappropriate and cannot be replaced by the Coast Guard during its review of the VRP.

The regulations implementing the response plan requirements for tank vessels (referred to as the VRP regulations) were initially promulgated in 1993 and have been amended at various times since then.  One of those amendments required inclusion of detailed provisions for salvage and marine firefighting (SMFF) in the VRP (73 Fed. Reg. 80618 et seq., 31 December 2008,

codified at 33 CFR Part 155, Subpart I, sections 155.4010-155.4055).  Among other things and because time is of the essence in response to a marine casualty involving a tank vessel carrying petroleum oil as its primary cargo, the regulation requires the vessel owner or operator (sometimes referred to as the plan holder) to include as part of its VRP a signed contract with each primary provider of response services for the vessel.  For SMFF services, that contract must be accompanied by a funding agreement consisting of pricing rates for time and materials that might be necessary for those services.  The definition of 'Funding Agreement" at 33 C.F.R. § 155.4025 provides: *A funding agreement is a written agreement between a resource provider and a planholder that identifies <u>agreed upon rates for specific equipment and services</u> to be made available by the resource provider under the agreement. The funding agreement is to ensure that salvage and marine firefighting responses are not delayed due to funding negotiations.  This agreement must be part of the contract or other approved means <u>and must be submitted for review along with the VRP."</u>* (emphasis added).   Since actual SMFF needs are unknown beforehand, fixed lump-sum pricing is inappropriate and will not be accepted by the Coast Guard during its review of the VRP.  For tank vessels carrying petroleum oil only as a secondary cargo, the plan holder is only required to identify the response resource provider that it intends to utilize, along with a letter of consent from the resource provider agreeing to be named in the VRP.

The regulations implementing the response plan requirements for nontank vessels (referred to as the NTVRP regulations) were promulgated in 2013 (78 Fed. Reg. 60100 et seq., September 30, 2013, codified at 33 CFR Part 155, Subpart J, sections 155.155.5010-155.5075). For response services that might be necessary in the response to an oil spill into the waters of the United States (including oil spill removal organizations (OSROs), emergency lightering service

provider, and the spill management team) nontank vessel owners and operators are only required to identify the resource provider that the plan holder intends to utilize along with a letter of consent from the service provider agreeing to be so named in the VRP.  An exception is made with regard to the provision of SMFF services for nontank vessels with a capacity of 2,500 barrels (105,000 gallons) or more of petroleum oil as fuel (bunkers).  In that case, the plan holder must include in its NTVRP a copy of the signed contract with the SMFF service resource provider, along with a copy of the funding agreement.  Like the VRP requirement, the funding agreement must consist of pricing rates for time and materials that might be necessary for those services.   Since actual SMFF needs are unknown beforehand, fixed lump-sum pricing is inappropriate and will not be accepted by the Coast Guard during its review of the NTVRP.

Throughout the GOLDEN RAY casualty response, the US Coast Guard has failed to understand and require compliance by the RP with the NTVRP regulations as they relate to the provision of SMFF services.  This erroneous position was reiterated most recently in the United States Coast Guard's Proposed Findings of Fact and Conclusions of Law filed with the United States District Court for the Southern District of Georgia on February 28, 2020.  Paragraph 9 of that document (on page 3) states: *The Coast Guard does not dictate how a vessel owner bills a contract for its NTVRP; the regulations only require that a contract be in place that meets the requirements of 33 C.F.R. Part 155, 33 C.F.R. § 155.5050(l).*  The referenced section of the NTVRP relates only to response resources necessary to perform shoreline protection operations.

On the other hand, 33 C.F.R. § 155.5050(i) addresses salvage, emergency lightering, and marine firefighting requirements.  Subsection 155.5050(i)(1) of that regulation states: *Nontank vessels with a capacity of 2,500 barrels or greater must meet the salvage, emergency lightering, and marine firefighting requirements found in subpart I of this part.*  Subpart I constitutes to

4

SMFF regulations, including those related to written contracts and funding agreements.  The requirement for provision of written contracts and funding agreements for SMFF services is also addressed in the definition of "Contract or other approved means" in 33 C.F.R. § 155.5020 of the NTVRP regulations.  There the regulation allows in subsection (5) that a letter of consent (as opposed to a written contract and funding agreement) for SMFF services only for nontank vessels with a fuel oil capacity of less than 2,500 barrels.

Further, 33 C.F.R. § 155.4045 provides that the vessel owner "may only list resource providers in [the] plan that have been arranged by contract or other approved means."  The contract between the owner of GOLDEN RAY and T&T Salvage was not signed until February 2020, but the FOSC approved the deviation on December 21, 2019.

Plaintiff contends that it has accurately set forth in its proposed findings of fact and incorporates herein and continues to propose for acceptance any and all of Plaintiff's proposed findings of fact.

## II.    CONCLUSIONS OF LAW

Contrary to Defendants' argument, sovereign immunity does not bar Plaintiff's causes of action.  Under the Larson-Dugan exception, "suits for specific relief against officers of the sovereign" allegedly acting "beyond statutory authority or unconstitutionally" are not barred by sovereign immunity. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689, 693 (1949); *see also Dugan v. Rank*, 372 U.S. 609, 621-22 (1963); *Made in the USA Found. v. United States,* 242 F.3d 1300, 1309 (11th Cir. 2001); s*ee* 5 U.S.C. 701 *et seq.*

Here, Plaintiff's causes of action seek specific and equitable relief from Defendants acting beyond their (1) statutory authority under 33 C.F.R. § 155.4032(a) and 33 U.S.C. § 1321(c)(3)(B), and (2) constitutional authority under the Fifth Amendment. A temporary

restraining order, injunctive relief, declaratory judgment, and writ of mandamus are forms of specific and equitable relief. *See United States v. Mitchell*, 463 U.S. 206, 207 (1983); *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). Accordingly, sovereign immunity does not bar Plaintiff's causes of actions.

Respectfully submitted,

**TAYLOR, ODACHOWSKI, SCHMIDT & CROSSLAND, LLC**

    /s/ Joseph R. Odachowski
**Joseph R. Odachowski**
Georgia State Bar No. 549470
**Peter H. Schmidt, II**
Georgia State Bar No.  629512
300 Oak Street, Suite 200
St. Simons Island, GA 31522
(912) 634-0955 – Telephone
(912) 638-9739 – Facsimile
jodachowski@tosclaw.com

**ATTORNEYS FOR PLAINTIFF DONJON-SMIT, LLC**

**OF COUNSEL:**
**CLARK HILL PLC**

/s/ Garney Griggs
**Garney Griggs**
Texas State Bar No. 08491000
**Clifford Bowie Husted**
Texas State Bar No. 00796803
909 Fannin, Suite 2300
Houston, TX  77010
(713) 951-5600 – Telephone
(713) 951-5660 – Facsimile
ggriggs@clarkhill.com
hustedc@clarkhill.com

**ATTORNEYS FOR PLAINTIFF**
**DONJON-SMIT, LLC**

**CERTIFICATE OF SERVICE**

This hereby certifies that on this day, I electronically filed the ***Plaintiff DonJon-SMIT, LLC'S***

***Response to United States Coast Guard's Proposed Findings of Fact and Conclusions of Law*** with the

Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing

to the following attorneys of record:

| | |
|---|---|
| Martha C. Mann, Esq.<br>Sydney A. Menees, Esq.<br>UNITED STATES DEPARTMENT OF JUSTICE<br>Environmental & Natural Resources Division<br>Post Office Box 7611<br>Washington, DC  20044<br>Martha.mann@usdoj.gov<br>Sydney.menees@usdoj.gov | Bradford C. Patrick, Esq<br>ASSISTANT UNITED STATES ATTORNEY<br>Post Office Box 8970<br>Savannah, Georgia  31412<br>Bradford.patrick@usdoj.gov |

This   2nd   day of   March   2020.

TAYLOR, ODACHOWSKI, SCHMIDT &
CROSSLAND, LLC

 /s/ Joseph R. Odachowski
**Joseph R. Odachowski**
Georgia State Bar No:          549470
**Peter H. Schmidt, II**
Georgia State Bar No. 629512

300 Oak Street, Suite 200
St. Simons Island, GA 31522
(912) 634-0955 – Telephone
(912) 638-9739 – Facsimile
jodachowski@tosclaw.com