UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| DONJON-SMIT, LLC,<br><br>            Plaintiff,<br>    v.<br><br>ADMIRAL KARL L. SCHULTZ, CAPTAIN JOHN W. REED, COMMANDER NORM C. WITT, and COMMANDER MATTHEW J. BAER, in their official capacity as officers of the UNITED STATES COAST GUARD,<br><br>            Defendants. | No. 2:20-cv-00011 LGW-BWC |

### UNITED STATES COAST GUARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER REQUIRING DEFENDANTS AND COMMANDER WITT TO PRODUCE CERTAIN RECORDS FOR USE AT HIS DEPOSITION SCHEDULED MARCH 9, 2020

Defendants, Admiral Karl L. Schultz, Captain John W. Reed, Commander Norm C. Witt, and Commander Matthew J. Baer (collectively, the "Coast Guard"), provide the following response to Plaintiff's motion to compel production of documents to be used at the deposition of the Federal On-Scene Coordinator ("FOSC"), Commander Norm C. Witt (Dkt. No. 47):

1.     At the telephonic hearing held on March 2, 2020, the Court directed Commander Witt to be deposed on or before March 9, 2020.  Dkt. No. 45 at 1 (Minute Order).

2.     The Court further stated that the "Court's intention is for the depo to be geared toward PI factors; not inclined to order that he come up with any records beyond the admin record, or produce any personnel or HR records for this purpose."  Dkt. No. 45 at 2.

1

3. Even before receiving the administrative record, which was produced on an expedited basis on March 3, 2020 pursuant to the Court's Order of February 27, 2020 (Dkt. No. 33), Plaintiff's counsel requested that the Coast Guard produce: (1) "[a]ny and all emails/text messages and voice mail recordings that relate to his services as FOSC in connection with the Golden Ray, or any communications he had with representatives of Donjon-SMIT, LLC, Owner, P&I Club, GSC or Gallagher"; and (2) "[a]ny documents that confirm that he is certified and qualified to perform a NIMS ICS position," unless such documents are already in the administrative record.  *See* Attachment 1 (email communications between counsel).

4. Undersigned counsel for the Coast Guard reminded Plaintiff's counsel of the Court's ruling during the telephonic conference, and stated that the Coast Guard would not produce additional documents in this matter absent a Court order.  *See* Attachment 1.

5. Now, after a "cursory review" of the administrative record, Dkt. No. 47 at 2, Plaintiff is essentially seeking reconsideration of the Court's denial of its prior request that the Commander provide documents beyond those which the Coast Guard has already certified as being the entire record of documents and materials considered – directly or indirectly – in approving the deviation from nontank vessel response plan ("NTVRP").  Plaintiff seeks (1) documents confirming that Commander Witt was properly certified "*in writing by a NIMCS compliant agency*" to serve as FOSC; (2) all emails, text messages, and voicemail messages to or from Commander Witt since the date the M/V GOLDEN RAY capsized on September 8, 2019; and (3) all draft reports and staff notes.  Dkt. No. 47 at 1 (emphasis in original).  Plaintiff makes no effort to demonstrate that this Court overlooked controlling authority or that a change in circumstances justify reconsideration of its earlier order.  Plaintiff's motion should be denied on this basis alone.

6.       As the Coast Guard has explained at the hearing held on February 25, 2020 and in its proposed findings of fact and conclusions of law filed on February 28, 2020, even if Plaintiff could demonstrate standing to bring its claims – which it has not and cannot – the only claim for which there is a waiver of sovereign immunity in this case is a claim for review of Commander Witt's approval of the deviation from the NTVRP under the Administrative Procedure Act ("APA").  *See* Hearing Tr. at 158-61; Dkt. No. 36 at 17-26.

7.       APA review is limited in scope to the administrative record.  5 U.S.C. § 706; *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743 (1985) ("The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.") (quoting *Camp v. Pitts,* 411 U.S. 138, 142 (1973)).  "The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking."  *Fla. Power & Light*, 470 U.S. at 744.

Under "certain circumstances," a reviewing court may look beyond the administrative record.  For example, extra-record materials may be considered where:

(1) an agency's failure to explain its action effectively frustrates judicial review;

(2) it appears that the agency relied on materials not included in the record;

(3) technical terms or complex subjects need to be explained; or

(4) there is a strong showing of agency bad faith or improper behavior.

*Altamaha Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 2007 WL 1830864, at *2 (S.D.Ga. June 21, 2007) (quoting *Pres. Endangered Areas of Cobb's History, Inc. ("PEACH") v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 n. 1 (11th Cir.1996).  These exceptions are narrowly construed, however, and the party seeking discovery bears a heavy burden to show that supplementation is necessary.  *Georgia River Network v. U.S. Army Corps of Eng'rs*, No. 4:10-

CV-267, 2012 WL 930325, at *2 (S.D. Ga. Mar. 19, 2012), *aff'd*, 517 F. App'x 699 (11th Cir. 2013) (citing *Kirkpatrick v. White,* 351 F. Supp. 2d 1261, 1272 (N.D. Ala.2004).

8. Plaintiff appears to recognize these narrow exceptions to the scope of review, Dkt. No. 47 at 5-6, but makes no argument as to which, if any, of the exceptions should apply here. Nor does Plaintiff meet its heavy burden to demonstrate that the Court should allow extra-record discovery.[1]

9. With respect to documents confirming that the FOSC is "properly certified," such documents relate to none of the reasons Plaintiff has asserted for why the NTVRP deviation should be set aside. The Complaint contains no allegation that the FOSC's decision is defective on this basis. *See generally* Fed. R. Civ. P. 8(a). Nor did Plaintiff advance this argument in its motion for injunctive relief or at the preliminary injunction hearing. Indeed, it was not until Plaintiff's Proposed Findings of Fact that Plaintiff even suggested that the FOSC may lack authority to grant a deviation. Dkt. No. 38 at 4. This issue therefore is not properly before the Court.

10. In any event, Plaintiff's suggestion that the FOSC is somehow unqualified is wholly unavailing. Commander Witt is properly designated and serving as the FOSC on the GOLDEN RAY response.

The National Contingency Plan ("NCP") sets the organization for a response and the responsibilities for On-Scene Coordinators. The NCP states that "USCG Captains of the Port (COTP) shall serve as the designated OSCs for areas in the coastal zone for which an [Area

---

[1] Nor should Plaintiff be permitted to attempt to address this omission in a reply. *United States v. Magluta*, 418 F.3d 1166, 1185 (11th Cir. 2005) (holding that arguments raised for the first time in a reply brief are abandoned.

Contingency Plan] is required under [Clean Water Act] section 311(j)." 40 C.F.R. § 300.120(b). Section 311(j) of the Clean Water Act, 33 U.S.C. § 1321(j) requires Area Contingency Plans. Marine Safety Unit Savannah has an approved Area Contingency Plan (available at http://ocean.floridamarine.org/acp/savacp/Documents/ACP/MSU_Savannah_ACP_2011_Revision.pdf; http://ocean.floridamarine.org/acp/savacp/Documents.html#EPA) (last visited March 4, 2020). The Area Contingency Plan references authorities and involved agencies and further provides that "[t]he Environmental Protection Agency has designated the COTP Savannah as the Federal On-Scene Coordinator (FOSC) for the coastal zone outlined in a Memorandum of Understanding (MOU) dated November 3, 1999.

http://ocean.floridamarine.org/acp/savacp/Documents/MOU_MOA/EPA_USCG_MOA.pdf (last visited March 4, 2019). This MOU outlines the coastal zone, and is the basis for the primary authority exercised in response to environmental emergencies. The MOU delineates the inland and coastal zones in EPA Region 4 (Marine Safety Unit Savannah's Area of Responsibility). The MOU describes the boundary designations and recognizes "the cognizant USCG COTP is the predesignated OSC for pollution response in the coastal zone" within the sub-zone of Sector Charleston's Area of Responsibility ("AOR") and within EPA Region 4.

In addition, Marine Safety Unit Savannah's designation as a COTP Zone and the Unit's Area of Responsibility is specifically identified in 33 C.F.R. § 3.35-15(b). As the Commanding Officer of Marine Safety Unit Savannah, Commander Witt is the Captain of the Port Savannah and thus the authorized FOSC in accordance with 40 C.F.R. § 300.120(b).

In sum, there should be no question that Commander Witt meets the necessary requirements to serve as the FOSC for the GOLDEN RAY response, and the Commander should not be required to produce any personnel records, consistent with the Court's previous Order.

11.     Further demonstrating that Plaintiff is engaged in a fishing expedition, Plaintiff seeks all emails, texts, and voicemail messages sent to or from Commander Witt "that relate to GOLDEN RAY and his activities as FOSC." Dkt. No. 47 at 1. In contending that these communications will allow there to be a "clear understanding of the conduct of Commander Witt as FOSC" since the date the GOLDEN RAY capsized in September 2019, *id.* at 4, Plaintiff improperly seeks to expand this case into an broad investigation of the Coast Guard's response to the capsizing of the GOLDEN RAY, covering timeframes well before and after the FOSC approved the deviation request. Moreover, the speculative reasons provided by Plaintiff have nothing to do with the arguments it has made in its Complaint or motion for preliminary relief. *See*, *e.g.*, *id.* at 4 (suggesting that these communications "may" show whether it was proper to grant the NTVRP deviation without T&T Salvage Co. and the Owner having entered into a contract). Plaintiff's request should be denied, as it has shown no justification for requiring the Commander and the Coast Guard to provide these communications.

12.     Finally, Plaintiff cites a NCP regulation that describes the contents of an administrative record for the selection of a response action, which provides that draft reports, staff notes, and privileged materials should not be included in an administrative record for a response. *See* Dkt. No. 47 at 6-7 (citing 40 C.F.R. § 300.810(b)-(d)). While the regulations do not apply to a NTVRP deviation approval, they do reflect what the Supreme Court has explained:

> inquiry into the mental processes of administrative decisionmakers is usually to be avoided. . . . *And where there are administrative findings that were made at the same time as the decision . . . there must be a strong showing of bad faith or improper behavior before such inquiry may be made.*

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (emphasis added). Thus, pre-decisional, deliberative documents are not part of the administrative record. *Id.* at 419;

6

*National Ass'n of Chain Drug Stores v. HHS*, 631 F. Supp. 2d 23, 26-28 (D.D.C. 2009).  The rationale for excluding deliberative documents from the record is derived from the well-accepted impropriety of delving into an agency's mental process.  *See, e.g.*, *United States v. Morgan*, 313 U.S. 409, 422 (1941); *Moye, O'Brien, O'Rourke, Hogan & Prickert v. National R.R. Passenger Corp.*, 376 F.3d 1260, 1278 (11th Cir. 2004) (holding, in the context of a Freedom of Information Act claim, that disclosure of deliberative documents would inhibit agency's decisionmaking process and discourage candor within the agency and thereby undermine the agency's ability to perform its functions).

Because the Court is to consider an agency's decision based on the rationale provided, and is not to engage in its own fact-finding, consideration of extra-record evidence is permitted only in extremely narrow circumstances.  *Alabama-Tombigbee Rivers Coalition v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007) ("Though certain circumstances may justify the district court going beyond the administrative record, it is not generally empowered to do so. [*PEACH*, 87 F.3d at 1246.]  It should do so only where there is initially 'a strong showing of bad faith or improper behavior' by the agency." (quoting *Overton Park*, 401 U.S. at 420)).  Plaintiff here has made no showing of bad faith, much less a strong showing, and has not carried its substantial burden to demonstrate that any applicable exception to the principle of record review justifies the Court's consideration of the drafts, notes, or other predecisional deliberative materials.

13. The Coast Guard recognizes that in ruling on the pending motion for preliminary injunction (Dkt. No. 6), the Court will take into account not only the merits of Plaintiff's asserted claims, but also any claim of irreparable harm to Plaintiff, the balance of hardships, and the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005).  However, Plaintiff has not

7

explained how any of the requested production of materials relate to anything other than Plaintiff's belated speculation that the FOSC is somehow unqualified or has acted in bad faith. Plaintiff's motion should be denied.


Date:   March 4, 2020            Respectfully submitted,

/s/  *Martha C. Mann*
MARTHA C. MANN
SYDNEY A. MENEES
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 514-2664 (Mann)
Fax: (202) 514-8865
martha.mann@usdoj.gov
sydney.menees@usdoj.gov

BOBBY L. CHRISTINE
United States Attorney

*/s/ Bradford C. Patrick*
BRADFORD PATRICK
Assistant United States Attorney
South Carolina Bar No. 102092
Post Office Box 8970
Savannah, Georgia  31412
Telephone:  (912) 652-4422
Facsimile:  (912) 652-4227
bradford.patrick@usdoj.gov


*Counsel for Defendants*