IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| **DONJON-SMIT, LLC,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**ADMIRAL KARL L. SCHULTZ, CAPTAIN JOHN W. REED, COMMANDER NORM C. WITT, and COMMANDER MATTHEW J. BAER, in their official capacity as Officers of the UNITED STATES COAST GUARD,**<br><br>**Defendants.** | **CIVIL ACTION NO:**<br>**2:20-CV-00011-LGW-BWC** |

### PLAINTIFF'S MOTION AND SUPPORTING BRIEF TO COMPEL

Following Commander Witt's deposition, it is clear that Defendants withheld critical documents from their production of the "Administrative Record," despite the Court's Order to produce the Administrative Record by March 10, 2020. [Dkt. 33]. In other words, Defendants failed to properly designate the record and are in violation of the Court's Order. For some of the undisclosed documents, it is unclear why they were not produced. Those documents include: (1) documents pertaining to T&T Salvage's plan and funding agreement with the Owner, (2) Plaintiff's December 8, 2019 proposed salvage and wreck removal plan, (3) documents regarding the SUPSALV technical analysis regarding the plans which were provided to Commander Witt; (4) weekly operational summaries that contain facts and events from the week, and (5) twelve (12) documents Defendants have filed with the Court but have failed to include in the Administrative Record (Dkts. 20-2, 21-1, 21-2, 21-3, 21-4, 21-5, 21-6, 21-7, 21-8, 21-10, 21-11, 21-12).[1]

---

[1] The subject of missing records was discussed before and during Cmdr Witt's deposition. The Parties have unable to resolve this issue.

Defendants also withheld documents under claims of questionable privileges, and, so far, they have not produced an Index inclusive of those privileged materials and associated privilege claims. The allegedly privileged documents include: (1) the weekly summaries Witt prepared regarding the salvage and wreck removal process and shared with others to whom it appears Defendants claim some type of privilege, (2) emails, texts, and voicemails to and from Witt regarding the salvage and wreck removal process, and (3) documents demonstrating any disciplinary actions resulting from the Golden Ray salvage and wreck removal process.

As laid forth below, Plaintiff files this dual-purpose Motion to Compel, requesting first that the Court order Defendants to produce the aforementioned undisclosed documents or assert a clear claim of privilege as to each document withheld. Second, Plaintiff requests the Court order Defendants to provide a privilege log as required by internal guidance and the law, so that the withheld materials and alleged claims of privilege can be fully analyzed so that Plaintiff can make a reasoned determination whether the claim of privilege is warranted. Third, in anticipation of Defendants asserting a "deliberative process" privilege, Plaintiff addresses the facial inapplicability of that privilege to all but a twenty-four-hour period between December 19 and 20, 2019.

### I. **Defendants Have a Duty to "Supplement" or "Complete" the Record**. [2]

When making a determination under the APA, the court "shall review *the whole record* or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5

---

[2] For the purposes of this motion, "supplement the record" is used interchangeably with "complete the record." *See* Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec., 2017 U.S. Dist. LEXIS 117545, *32; 2017WL 3189446 (D. Md. 2017). While the jurisprudence is somewhat inconsistent on the use of these terms, Plaintiff interprets the terms to mean that Defendants are under a duty to fully provide all evidence required under 5 USCS § 706; at this point, they have not done so. Plaintiff is not arguing with this Motion for the Court to consider extra-record evidence, *i.e.,* evidence outside of the appropriately disclosed "whole record." However, Plaintiff notes that it anticipates filing such a Motion in the future.

USCS § 706 (emphasis added). In other words, where a government agency's decision is questioned, review consists of determining whether the agency action is supported by substantial evidence on the record as a whole and whether the agency has complied with applicable procedures and statutes. Universal Camera v. N.L.R.B., 340 U.S. 474 (1951).  "Review is to be based on the *full* administrative record that was before the Secretary at the time he made his decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) (emphasis added).

"The requirement of review upon 'the whole record' means that courts may not look only to the case presented by one party, since other evidence may weaken or even indisputably destroy that case." Pittsburgh S.S. Co. v. NLRB, 180 F.2d 731, 734 (6th Cir. 1950) (quoting Senate Document No. 248, 79 Cong. 2d Sess.).  Therefore, the question that must be answered "is essentially whether the agency's conclusion … is reasonable on the record as a whole, including the hypothetical … findings." Millar v. Federal Communications Com., 707 F.2d 1530, 1540 (D.C. Cir. 1983).

"To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of 'the whole record.' 5 U.S.C. § 706 (1982); *see* S. Rep. 752, 79th Cong., 1st Sess. 28 (1945) ('The requirement of review upon 'the whole record' means that courts may not look only to the case presented by one party, since other evidence may weaken or even indisputably destroy that case.'); H.R. Rep. No. 9180, 79th Cong., 2nd Sess. 46 (1946) (same); *see also* Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88, 95 L. Ed. 456, 71 S. Ct. 456 (1951); Walter O. Boswell Memorial Hospital v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984) (where an Administrative Record included "large gaps in the facts

and opinions before the agency", the agency failed to produce the "whole record," acceptance of which was reversible error).

Indeed, "the *whole* administrative record . . . is not necessarily [or always] those documents that the agency has compiled or submitted as '*the*' administrative record." Am. Farm Bureau Fedn v. United States EPA, 2011 U.S. Dist. LEXIS 148637, *9, WL 6826539 (M.D. Pa. 2011) (internal citations omitted; emphasis added). Accordingly, the courts must engage in an appropriate review to ensure that the full and complete administrative record has been submitted. *See* Int'l Longshoreman's Assoc. v. Nat'l Mediation Bd., 2006 U.S. Dist. LEXIS 4080, *7 (D.C. Cir. Jan. 25, 2006) ("It is improper for a district court to review only a 'partial and truncated [administrative] record'" (quoting Natural Res. Def. Council, Inc. v. Train, 519 F.2d 287, 291, 171 U.S. App. D.C. 151 (D.C. Cir. 1975)).

Further, an "agency may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made." Blue Ocean Inst. v. Gutierrez, 503 F.Supp.2d 366, 369 (D.D.C.2007). Nor may an agency exclude information simply because it did not rely on it for its final decision. *See* Banner Health v. Sebelius, 945 F.Supp.2d 1, 16 (D.D.C.2013). Rather, "a complete administrative record should include all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision." Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior, 143 F.Supp.2d 7, 12 (D.D.C.2001).

To "supplement" the administrative record means to permit review of material that the agency considered but failed to include. Pacific Shores Subdivision, California Water Dist. v. U.S. Army Corps of Eng'rs, 448 F. Supp.2d 1, 5 (D.D.C. 2006). Some federal courts have found that an agency record may be supplemented "if background information was needed to determine whether

the agency considered all the relevant factors." City of Dania Beach v. F.A.A., 628 F.3d 581, 590 (D.C. Cir. 2010); Mobile Baykeeper, Inc. v. United States Army Corps of Eng'rs, 2014 U.S. Dist. LEXIS 77893, *5-6, (M.D. Ala. 2014).

Importantly, "where a plaintiff contends that an agency has not submitted to the court all the materials that properly constitute the administrative record, no showing of bad faith or improper purpose is necessary. Overton Park, 401 U.S. at 420 (clarifying that a showing of bad faith is only required where the method of supplementation involves testimony inquiring into the mental processes of the administrative decision makers); Ohio Valley, 2003 U.S. Dist. LEXIS 148, *10-11 (where "Plaintiffs contend that EPA has not submitted to the court all the materials that properly constitute the complete administrative record . . . no showing of bad faith for improper purpose is necessary); Ad Hoc Metals Coalition v. EPA, 227 F. Supp.2d 134, 140 n.5 (D.C. Cir. 2002);" Am. Farm Bureau Fedn, 2011 U.S. Dist. LEXIS at *12-13.

To overcome the presumption that the agency properly designated the record, "a plaintiff must (1) 'identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record,' and (2) 'identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record[.]'" Ctr. for Food Safety v. Vilsack, 2017 U.S. Dist. LEXIS 67822, 2017 WL 1709318, at *3 (citation omitted); *see also* Pac. Shores, 448 F. Supp. 2d at 6.

Here, as evidenced by Commander Witt's deposition, the above list of omitted documents *now* known to Plaintiff, and other filings by Defendants, Plaintiff has overcome the presumption that the Coast Guard properly designated the record. Clearly, they have not; therefore, the Court should order that Defendants complete the record. Reasonable, non-speculative grounds exist that

Witt considered or inappropriately failed to consider all six categories of documents which Defendants withheld from the Administrative Record:

(1) In his deposition, Witt admitted the existence of documents pertaining to T&T Salvage's plan that demonstrate the lack of funding agreement with the Owner, as of March 9, 2020. Even with a valid contract, Witt inappropriately relied on T & T's salvage plan when making his decision to permit T&T to displace Plaintiff as the SMFF provider on all nineteen (19) services. [Depo. of Witt, pp. 147, 238-242]. These documents, rather than demonstrating Will's reliance on relevant evidence to support his deviation decision, demonstrate, instead, inappropriate deference to T&T and the Owner.

(2) Plaintiff's December 8, 2019 proposed demolition plan. Defendants admitted that the Coast Guard considered DJS's December 8, 2019 proposal, at least to compare it to DJS's original plan and determine – albeit incorrectly – that the two plans were "substantially similar." [Dkt. 20, p. 6[3]].

(3) In his deposition, Witt admitted that he received and reviewed documents from SUPSALV reflecting technical analysis of one or more plans. [Depo. of Witt, pp. 147-148]. To date, the only documents in the Administrative Record regarding technical analysis of the two plans are two emails, both from SERT. [Dkt. 52-3, pp. 12-16]. Notably, the SERT evaluation of T&T's plan is less than a page. Id., at 15.

(4) In his deposition, Witt admitted that he prepared weekly summaries regarding the salvage and wreck removal process and shared with others. Depo. of Witt, pp. 222-224.

---

[3] Therein, Defendants state, "Plaintiff submitted its plan twice to the Owner for consideration, once at the end of its exclusive 21-day negotiating period [the original plan] and again during the Owner's Invitation to Tender process [on December 8, 2019]. Plaintiff's plan was substantially similar both times…"

These summaries presumably began no later than October and also presumably continue to this day.[4] As these summaries constituted Witt's understanding of the development of the circumstances, they must have played a part in his decision to deviate, either directly or indirectly, and the summaries contain the facts and events of the weeks.

(5) In his deposition, Witt admitted that he withheld a great deal of correspondence and communication regarding the salvage and wreck removal process. Specifically, Witt admitted that emails to and from DJS and the P&I Club are currently missing from the Administrative Record. Depo. of Witt, pp. 149-150. As this correspondence was to and from Witt with two of the major players in this OPA-90 event, he obviously considered them, either directly or indirectly, in making his decision to deviate. He admitted that he did not forward to Defendants' counsel emails that relate to DJS (Depo. of Witt, 150:6-8) or to P&I Club (Depo. of Witt, 150:9-14) or to GSC (Depo. of Witt. 150:15-21).

(6) In his deposition, through his attorney, Witt withheld information demonstrating any disciplinary action resulting from the Golden Ray salvage and wreck removal process. Depo. of Witt, pp. 149-152. If Witt, or others involved in the Golden Ray response, were disciplined prior to the deviation decision, that could have affected Witt's decision, directly or indirectly.

Second, with the exception of disciplinary records, each of these categories of documents and materials are known to exist in the "whole record" which should have been produced. Their

---

[4] For the record, Plaintiff only contends that the summaries prior to the deviation decision are appropriately part of the Administrative Record.

existence is confirmed through admissions by Defendants in prior filings or Witt's deposition. Regarding the disciplinary records, the only reason Plaintiff is not aware of their existence is because Defense Counsel directed Witt not to answer a line of deposition questioning. But for that obstruction, Plaintiff would have proof of those records' existence (or non-existence) as well.

In short, Defendants have improperly withheld non-privileged documents and materials that Commander Witt relied on in making the decision to deviate. As such, Defendants have violated the Court's Order and the Administrative Record remains incomplete. The Court should order that Defendants provide a completed, "whole record."

During Commander Witt's deposition, when it became clear that documents were missing from the Administrative Record, counsel for Defendants suggested as a "remedy" that Plaintiff's counsel should "please let … us know to the extent you believe there are omissions in the administrative record, and we will, you know, find out what happened." Depo. of Witt 265:3-6. Of course, the problem with that request is that Plaintiff's counsel "doesn't know the constitutes the entirety of that it doesn't have, precisely because it is *not there."* Defendants were ordered to produce the entire Administrative Record, and it appears that Defendants were selective on the scope of the record produced and then were even more selective with respect to determining what records might have some level of protection on the basis of privilege. By way of example of the parsing of the "record" Plaintiff has received, in Defendants' initial production set they did not even include the only technical analysis that Commander Witt relied upon to determine that both plans were "feasible".

While Defendants insist that the Court's ability to review Commander Witt's decision is limited to the Administrative Record, the Defendants are working hard to select only those portions

of the documents and files related to the GOLDEN RAY that they apparently believe support the deviation decision for the Plaintiff and the Court to review.

### II.  Defendants are Required to Produce a Privilege Log or Privilege Index.

Defendants' failure to appropriately index the documents and materials considered privileged, including the bases for the claimed privilege, constitutes a violation of the law and internal guidance. While administrative law may offer significant deference to federal agencies, the law does not afford Defendants unilateral discretion to determine privilege. That power is left to the court, and for the court to determine whether a privilege is appropriate, a privilege log or index must be disclosed.

#### a.  Under the DOJ's Own Guidance, a Privilege Log or Index should be disclosed.

Under the Department of Justice Environment and Natural Resources Division's own Guidance on the Compilation of Administrative Records, Defendants are required to prepare and disclose a privilege log. The relevant Guidance states, "If documents and materials are determined to be privileged or protected, the **index of record must identify the documents and materials, reflect that they are being withheld, and state on what basis they are being withheld**." (Emphasis added.) ENV'T & NATURAL RES. DIV., U.S. DEP'T OF JUSTICE, GUIDANCE TO FEDERAL AGENCIES IN COMPILING THE ADMINISTRATIVE RECORD (Jan. 1999) (http://environment.transportation.org/pdf/programs/usdoj_guidance_re_admin_record_prep.pdf) *See also* Liu, Slyvia, UNITED STATES ATTORNEYS' BULLETIN, (Feb. 2000), p. 10 ("If a document or material is being withheld based on a privilege or prohibition, state the privilege or prohibition.") (available at https://www.justice.gov/sites/default/files/usao/legacy/2006/06/30/usab4801.pdf). Given that the DOJ's own internal guidance suggests, in no uncertain terms, that

privileged materials should be logged and disclosed, including the alleged basis for withhold, the Court should order that Defendants provide a Privilege Log or Index.

b.  Under the law, a Privilege Log or Index should be disclosed.

Whether federal agencies are required to produced privilege indexes appears to be a matter of first impression for the Eleventh Circuit. The Second Circuit, however, has found federal agencies should be compelled, at a minimum, to provide privilege logs. *See* In re Nielsen, 2017 U.S. App. LEXIS 27681, *11 (2nd Cir. 2017).

Various California federal district courts have also required parties withholding documents based on privilege to, at a minimum, substantiate those claims in a privilege log. *See, e.g.,* Ctr. of Biological Diversity v. U.S. Bureau of Land Management, 2007 U.S. Dist. LEXIS 81114, 2007 WL 3049869, at * 6 (N.D. Cal. Oct. 18, 2007) (finding in camera review of purportedly privileged documents appropriate despite declaration formally asserting the deliberative process privilege and explaining the bases for those assertions); People of the State of California ex rel. Lockyer v. U.S. Dep't of Agric., 2006 U.S. Dist. LEXIS 15761, 2006 WL 708914, at *4 (N.D. Cal. Mar. 16, 2006) (granting the plaintiffs' motion to compel and ordering the defendants to provide a privilege log if withholding any documents on the basis of privilege).

In Virginia, federal courts heightened the standard, finding "[o]nce a court has determined that a plaintiff has provided enough evidence for the court to conclude that the agency has omitted otherwise relevant material from the administrative record, the agency must explain its decision to do so. Although some agency documents, such as purely internal deliberative materials, may be protected from inclusion in the administrative record, … Defendants must make a specific showing establishing the application of a privilege for each document that it contends that it may withhold

based on privilege." Tafas v. Dudas, 530 F. Supp. 2d 786, 800 (E.D. Va. 2008) (internal citation omitted).

Here, the Court should rule that Defendants are required to produce a privilege log because the facts of this case rise to even the heightened Virginia standard regarding privilege logs. As previously noted, Defendants have withheld six categories of relevant evidence from their version of the "Administrative Record." Now, it is Defendants' duty to "explain [their] decision to do so…. Defendants must make a specific showing establishing the application of a privilege for each document that [they contend they] may withhold based on privilege." Tafas, 530 F. Supp.2d at 800.

**III.     Defendants are Not Entitled to a Blanket Deliberative Process Privilege Over Witt's Weekly Summaries or Factual Correspondence.**

From review of recent filings [Dkt. 49, p.7] and Witt's deposition (Depo. of Witt, p. 223), Plaintiff anticipates that Defendants will attempt to assert a blanket deliberative process privilege over all of Witt's "weekly summaries" and his currently non-disclosed correspondence. Such an assertion should not be allowed because is it belied by both the facts of this case and the law.

At most, Defendants can claim a deliberative process privilege over the twenty-four period between receiving the request for deviation and the deviation approval. Outside of that time period, there was no deliberation according to Defendants' own account of the facts. The speed in which Defendants made this agency decision create a unique situation for the deliberative process privilege. It is easy to imagine that the typical agency final decision may take months, sometimes years, and, therefore, the agency would refuse to produce copious amounts of deliberative documents. Here, that is not the case. Commander Witt received the deviation request and within

11

twenty-four hours made his decision. As such, by comparison, the deliberative process privilege available to agency documents must be very limited.

Two requirements must be met in order for the deliberative process privilege to apply: (1) the document must be pre-decisional; and (2) it must be deliberative in nature. F.T.C. v. Warner Communications, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984). Purely factual matters are not protected by this privilege. Branch v. Phillips Petroleum Co., 638 F.2d 873, 882 (5th Cir. 1981); *see also* EPA v. Mink, 410 U.S. 73, 91 (1973); Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc., 2016 U.S. Dist. LEXIS 196863, *17, 2016 WL 11635753 (S.D. Miss. 2016) (finding that communications between agency executives could be factual and not entitled to the deliberative process privilege).

Furthermore, when claiming deliberative process privilege, "[t]he initial burden of establishing the applicability of the privilege is on the government. In addition to showing that withheld documents fall within the claim of privilege, the government must comply with formal procedures necessary to invoke the privilege," including providing a privilege log. Greenpeace v. National Marine Fisheries Serv., 198 F.R.D. 540 (W.D. Wash. 2000) (citing Redland Soccer Club v. Dep't of the Army, 55 F.3d 827, 854 (3rd Cir. 1995); Exxon Corp. v. Dep't of Energy, 91 F.R.D. 26, 43-44 (N.D. Tx. 1981); Mobil Oil Corp. v. Dep't of Energy, 520 F. Supp. 414, 416 (N.D.N.Y. 1981)). **"Blanket assertions of the privilege are insufficient"** to demonstrate its applicability to a particular document. Greenpeace, 198 F.R.D. 540 (citing Exxon Corp., 91 F.R.D. at 43) (Emphasis added).

In this case, Plaintiff will concede that from the time Witt received the deviation request to the time he issued the deviation approval that the deliberative process privilege applies. No analysis of that day is needed; no summary or internal Coast Guard correspondence need be

disclosed from within those hours.[5] However, the scope of that privilege is significantly narrowed by the second element of this privilege – the documents "must be deliberative in nature." Before the date of deviation request, December 19, 2019, Defendants had no reason to deliberate because presumably there was nothing to decide. Only after that request would deliberation over the deviation have occurred. Given the narrowness of this privilege, many other categories of documents presumably withheld on this privilege should not have been afforded its protection.

To the extent Witt or any other Defendant had communications with relevant third parties (the Owner, P&I Club, T&T, DJS, etc.) regarding the wreck removal and demolition, those documents ought not be privileged under a claim of "deliberative process," whether within the December 19th twenty-four period or not. The deliberative process privilege is designed to protect *intra-agency* memoranda and other such records, not communications with third parties. *See* Amfac Resorts, LLC ,143 F. Supp.2d at 13.

Also, to the extent Witt and other Coast Guard officials had internal communications regarding the wreck removal that were **factual in nature**, rather than **purely deliberative**, Plaintiff is entitled to those communications, as well, because factual matters are not protected by this privilege. Branch, 638 F.2d at 882. That being said, as previously noted, **all** communications prior to December 19, 2019 regarding the wreck removal should be factual in nature, because **prior to that date** there was nothing to deliberate.

Plaintiff is entitled to include the weekly summaries prepared by senior Coast Guard officers and reviewed and approved by Witt, prior to December 19, 2019. Those summaries

---

[5] Plaintiff concedes this point as it is simplest, but it should be noted that Plaintiff is likely entitled to some amount of internal agency communications during this time period, as well, because it is unlikely that all that communication was purely deliberative. There likely was some factual communication, too, which should be including in the Administrative Record. Again though, for the sake of ease, Plaintiff will concede the entirety of these twenty-four hours.

include information regarding the circumstance of the wreck, the removal and demolition process, and other relevant considerations. As with the first two categories of allegedly privileged documents, these summaries could not be "deliberative in nature" because there was nothing to deliberate prior to the date Witt received the deviation request.

Lastly, the deliberative process privilege is a qualified one. A party may obtain deliberative materials "if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." Warner Communications, Inc., 742 F.2d at 1161. A court must make this determination by considering: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. Id. (citations omitted). To the extent Defendants assert a blanket deliberative process privilege, that is even more reason for the Court to order a Privilege Log.  And, if a deliberative process privilege claim is made, Plaintiff requests that the Court order Defendants to provide those documents to the Court for *in camera* review and determination of whether Plaintiff should be entitled to have access to those documents for reasons outlined above. .

## CONCLUSION

Based on the foregoing, DJS asks the Court to order Defendants to 1) disclose the aforementioned undisclosed documents and/or assert a clear claim of privilege over them, and 2) provide a privilege log, as required by DOJ internal guidance and the law, so that the withheld materials and alleged claims of privilege can be fully examined.

*SIGNATURES ON FOLLOWING PAGE*

This 11th March 2020.

Respectfully submitted,

**TAYLOR, ODACHOWSKI, SCHMIDT & CROSSLAND, LLC**

/s/ Joseph R. Odachowski
**Joseph R. Odachowski**
Georgia State Bar No. 549470
**Peter H. Schmidt, II**
Georgia State Bar No. 629512
300 Oak Street, Suite 200
St. Simons Island, GA 31522
(912) 634-0955 – Telephone
(912) 638-9739 – Facsimile
jodachowski@tosclaw.com

**ATTORNEYS FOR PLAINTIFF DJS, LLC**

**OF COUNSEL:**
**CLARK HILL PLC**

  /s/ Garney Griggs
**Garney Griggs**
Texas State Bar No. 08491000
**Clifford Bowie Husted**
Texas State Bar No. 00796803
**Gregorio Flores**
Texas State Bar No. 24116367
909 Fannin, Suite 2300
Houston, TX  77010
(713) 951-5600 – Telephone
(713) 951-5660 – Facsimile
ggriggs@clarkhill.com
hustedc@clarkhill.com
gflores@clarkhill.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

This hereby certifies that on this day, I electronically filed the *Plaintiff DonJon-SMIT, LLC'S MOTION AND SUPPORTING BRIEF TO COMPEL* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Martha C. Mann, Esq.<br>Sydney A. Menees, Esq.<br>UNITED STATES DEPARTMENT OF JUSTICE<br>Environmental & Natural Resources Division<br>Post Office Box 7611<br>Washington, DC  20044<br>Martha.mann@usdoj.gov<br>Sydney.menees@usdoj.gov | Bradford C. Patrick, Esq<br>ASSISTANT UNITED STATES ATTORNEY<br>Post Office Box 8970<br>Savannah, Georgia   31412<br>Bradford.patrick@usdoj.gov |

This 11th day of March 2020.

                                      **TAYLOR, ODACHOWSKI, SCHMIDT & CROSSLAND, LLC**

                                      /s/  Peter H. Schmidt, II
                                      **Joseph R. Odachowski**
                                      Georgia State Bar No:          549470
                                      **Peter H. Schmidt, II**
                                      Georgia State Bar No. 629512

300 Oak Street, Suite 200
St. Simons Island, GA 31522
(912) 634-0955 – Telephone
(912) 638-9739 – Facsimile
jodachowski@tosclaw.com