# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

DONJON-SMIT, LLC,

    Plaintiff,

v.

ADMIRAL KARL L. SCHULTZ,
CAPTAIN JOHN W. REED, COMMANDER
MATTHEW J. BAER, and COMMANDER
NORM C. WITT, in their
individual capacity, and in
their official capacity as
Officers of the UNITED STATES
COAST GUARD,

    Defendants.

No. 2:20-CV-011

FILED
Scott L. Poff, Clerk
United States District Court

By MGarcia at 11:03 am, Apr 03, 2020

## ORDER

Before the Court is Donjon-SMIT, LLC's ("DJ-S") Motion to Compel. Dkt. No. 57. This motion has been fully briefed and is ripe for review. Dkt. Nos. 69, 70, 81. After considering the parties' respective briefs, reviewing the documents filed by the parties, and for the reasons provided below, DJ-S' Motion to Compel is **DENIED**.

## BACKGROUND

This matter arises from the capsizing of the M/V GOLDEN RAY in the St. Simons Sound. Admin. R. at 716. It is the largest cargo shipwreck in United States coastal waters since Exxon Valdez. Dkt. No. 56 ¶ 10. Because the M/V GOLDEN RAY carried an estimated

380,000 gallons of oil and approximately 4,200 automobiles—each with their own pollution risk—the United States Coast Guard determined that "there may be an imminent and substantial threat to the public health or welfare or the environment because of an actual or substantial discharge/release of oil or designated hazardous substance from the vessel." Admin. R. at 94. As such, the incident triggered the statutory and regulatory requirements of the Oil Pollution Act of 1990 ("OPA 90"). 33 U.S.C. § 2701-2762; see Admin. R. at 94.

To comply with the requirements of OPA 90 and the Coast Guard regulations promulgated under it, each owner of a non-tank vessel carrying oil, like the M/V GOLDEN RAY, must have a Non-Tank Vessel Response Plan ("NTVRP") in place in the event of a "worst case discharge or substantial threat of discharge," so that responders can react to discharges and threats of discharge quickly and "without the need for contract negotiations during an actual emergency." 33 C.F.R. § 155.5010; 33 U.S.C. § 1321(j)(5)(D) (providing for response plan requirements); Salvage and Marine Firefighting Requirements; Vessel Response Plans for Oil, 73 FR 80618-01, 80635 (Dec. 31, 2008).

Once the Coast Guard determines OPA 90 and its regulations apply to an incident, the non-tank vessel owner must act in accordance with the federally regulated National Contingency Plan, Area Contingency Plan, and the NTVRP. An owner cannot deviate from

these plans unless the President of the United States or the Federal On-Scene Coordinator ("FOSC") "determines that deviation from the response plan would provide for a more expeditious or effective response to the spill or mitigation of its environmental effects." 33 U.S.C. § 1321(c)(3)(B). Both parties agree that the approval of a deviation request by the FOSC constitutes a final agency action by the Coast Guard.

On September 20, 2017 DJ-S and G-Marine Services, Co., Ltd. ("G-Marine") entered into a contract agreeing that DJ-S would provide Salvage and Maritime Firefighting ("SMFF") services for G-Marine's vessels while in U.S. waters, including the M/V GOLDEN RAY, should an event involving the vessel trigger OPA 90's statutory and regulatory requirements. Dkt. No. 22-5 ("NTVRP Contract").[1] On December 19, 2019, the Owner requested a deviation from the NTVRP for the purpose of adding T&T Salvage, LLC ("T&T") as a SMFF service provider. Admin. R. at 86-93. On December 21, 2019, Commander Witt, the FOSC for the M/V GOLDEN RAY response, approved the Owner's deviation request (the "deviation decision") and wrote a contemporaneous "Decision Memo" explaining the decision. Id. at 85, 126-32.

---

[1] The registered owner of the M/V GOLDEN RAY is GL NV24 Shipping, Inc. (the "Owner"). Admin. R. at 1, 30. It "barebone charter[s]" the vessel to Hyundai Glovis Co, Ltd., ("Glovis") who in turn appointed G-Marine as the vessel's technical and crew managers. Id. at 30.

In its Amended Complaint, dkt. no. 56, DJ-S alleges, inter alia, that Commander Witt's decision was "arbitrar[y] and capricious[], in [violation] of Donjon-SMIT's due process rights under the Fifth Amendment, in excess of their statutory authority, and without observance of procedure required by law." Id. ¶ 38. Such allegations trigger judicial review of the Commander's deviation decision under the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2)(A)-(D). In its review of Commander Witt's decision, the Court is limited to the administrative record.

On February 27, 2020, this Court ordered the Coast Guard to produce the whole administrative record by March 3, 2020. Dkt. No. 33. The Court expedited production of the administrative record due to the time sensitive nature of the injunctive relief requested by DJ-S. The Coast Guard timely produced the administrative record. Dkt. No. 46. The Coast Guard further completed the administrative record it originally filed by including omitted documents on March 6, 2020, dkt. no. 52, and on March 13, 2020, dkt. no. 69.

DJ-S alleges in its Motion to Compel that the Coast Guard "failed to properly designate the record," and moves this Court to compel the Coast Guard to produce the "whole record," or otherwise produce privilege logs for the allegedly withheld documents. Dkt. No. 57 at 1-2.

## STANDARD OF REVIEW

DJ-S presents its motion as a motion to compel; however, DJ-S alleges that the Coast Guard "withheld critical documents from their production of the Administrative Record." Dkt. No. 57 at 1 (internal punctuation omitted). Moreover, DJ-S requests that this Court "order the Coast Guard to produce . . . undisclosed documents or assert a clear claim of privilege as to each document withheld." Id. at 2. DJ-S further requests that the Court "order the Coast Guard to provide a privilege log" for each document it argues is not part of the administrative record. Id. Accordingly, the Court will treat DJ-S' motion as a motion to complete and supplement the administrative record and apply the standard of review appropriate for such motions.[2]

Since OPA 90 does not specify a standard of review for deviation decisions, the standards provided in the APA apply. 5 U.S.C. § 706; Gerber v. Norton, 294 F.3d 173, 178 (D.C. Cir. 2002). Under the APA, a court's review of a final agency action is "generally confined to the administrative record that was before the [decision maker] when it made its decision." Franks v. Salazar, 751 F. Supp. 2d 62, 66 (D.C.C. 2010) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)). Once produced, the agency is entitled to a "strong presumption of

---

[2] As the case proceeds to discovery, the parties will be permitted to reurge any discovery-based motions necessary, such as Motions to Compel.

regularity that it properly designated the administrative record." Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corp of Eng'rs, 448 F. Supp. 2d 1, 5 (D.D.C. 2006). The presumption exists because an agency's certification of its administrative record "serves as formal representation by the agency that it duly evaluated all predecisional documents before excluding them from the record." Oceana v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019) (quotations, citations, and alterations omitted). To overcome this presumption, the movant must "(1) identify reasonable, non-speculative grounds for the belief that the documents were considered by the [decision maker] and not included in the record," and (2) "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are likely to exist as a result of other documents that are included in the administrative record." Ctr. for Food Safety v. Vilsack, No. 15CV0159, 2017 WL 1709318, at *3 (N.D. Cal. May 3, 2017) (punctuation and citations omitted). In so doing, the moving party must make a "clear showing" of "strong" or "substantial" evidence that the administrative record is incomplete to overcome the presumption of the record's regularity and completeness. Tafas v. Dudas, 530 F. Supp. 2d 786, 795 (E.D. Va. 2008).

If the movant can do this, then the administrative record may be amended in one of two ways. First, it may be <u>completed</u> by

"including evidence that should have been properly a part of the administrative record but was excluded by the agency." WildEarth Guardians v. Salazar, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009). Second, it may be supplemented by "adding extrajudicial evidence that was not initially before the agency but the [moving] party believes should nonetheless be included in the administrative record." Id.

If a party seeks to complete the record, it need not show that the agency engaged in bad faith or an otherwise improper purpose. See Overton Park, 401 U.S. at 420. However, if a party seeks to supplement the record, a process that necessarily involves discovery, then a strong or concrete showing of bad faith or improper purpose is necessary (in addition to a strong showing that the record is incomplete). Ohio Valley Envtl. Coal. v. Whitman, 3:02-cv-0059, 2003 WL 43377, at *2 (S.D.W. Va. Jan. 6, 2003) (citing Overton Park, 401 U.S. at 420).

**ANALYSIS**

In its Motion to Compel and Brief in Support, dkt. no. 57, DJ-S alleges the Coast Guard omitted five groups of documents from the administrative record: (1) documents pertaining to T&T's Salvage Plan ("T&T's Plan)[3] and funding agreement with the Owner, (2) DJ-S' December 8, 2019 Plan ("DJ-S' ITT Plan"),[4] (3) the U.S.

---

[3] For a summary of T&T's Plan, see Dkt. No. 83 § II.G.2.
[4] For a summary of DJ-S' ITT Plan, see id. § II.G.4.

Navy Supervisor of Salvage and Diving's ("SUPSALV") technical analysis of T&T's Plan and DJ-S' November 5, 2019 Plan ("DJ-S' LOI Plan"),[5] (4) weekly operational summaries, and (5) documents the Coast Guard otherwise filed with the Court. Id. at 1.[6] DJ-S claims that doing so will complete the administrative record. See Id. at 7. DJ-S further adds that the Coast Guard's disciplinary records, even though they are extra-record evidence, should be produced to supplement the record.[7] Id. The Court addresses each category as follows:

I. **Documents Pertaining to T&T's Plan**

DJ-S alleges that Commander Witt "admitted" to considering documents pertaining to T&T's Plan that "demonstrate the lack of funding agreement with the Owner." Dkt. No. 57 at 1. The record shows otherwise. During Commander Witt's deposition, DJ-S' counsel asked Commander Witt if on the date of his deviation decision he had "any basis" to conclude that "there were funding agreements in place" between T&T and the Owner to pay for the services provided under T&T's Plan. Witt Depo. 241:17-23. Commander Witt responded,

---

[5] For a summary of DJ-S' LOI Plan, see id. § II.G.3.
[6] This category of documents includes dkt. nos. 21-1, 21-2, 21-3, 21-4, 21-5, 21-6, 21-7, and 21-12. Dkt. No. 57 at 1. None of these documents were filed by the Coast Guard. Of note, DJ-S withdrew this request insofar as it included dkt. nos. 20-2, 21-8, 21-10, and 21-11. See Dkt. No. 88 ¶ 5.
[7] DJ-S requests that this Court consider the Coast Guard's disciplinary records in its review of Commander Witt's deviation decision. Dkt. No. 57 at 7. DJ-S admits such records are currently not "known to exist in the whole record." Id. The Court construes this statement as Plaintiff's acknowledgement that the disciplinary records are "extra-record" material.

"No," and elaborated that because he did not have such documents, he required T&T to obtain a letter of consent that showed "they were moving in that direction." Id. With regard to the T&T Plan documents, DJ-S' motion is **DENIED**.

## II. DJ-S' ITT Plan

DJ-S alleges that Commander Witt considered its ITT Plan before issuing his deviation decision. DJ-S argues the Coast Guard's counsel admitted as much in its Response in Opposition to DJ-S' Motion for Injunctive Relief. Dkt. No. 20. There, the Coast Guard's counsel argues:

> Plaintiff submitted its plan to the Owner twice for consideration, once at the end of its exclusive 21-day negotiating period and again during the Owner's Invitation to Tender process. Plaintiff's plan was substantially similar both times and proposed Small Section Demolition and the commencement of cutting operations at the same time as the placement of its protective perimeter.

Id. at 6. The Court cannot construe these two sentences as an admission that Commander Witt considered DJ-S' ITT Plan prior to issuing his deviation decision. To do so, at this point, would be pure speculation. This is particularly true given Commander Witt's deposition testimony. First, although Commander Witt testified that he knew DJ-S submitted another plan to the Owner as part of the ITT process, he does not recall the Owner providing him with a copy of DJ-S' ITT Plan for consideration. Witt Depo. 273:9-13, 274:4-6 ("I don't recall seeing those."). Second, although DJ-S

did send its ITT Plan to Captain Reed, dkt. no. 70-2, and the Coast Guard's Salvage Engineering Response Team ("SERT"), dkt. no. 70-1, prior to Commander Witt's deviation decision, DJ-S presents no evidence that either Captain Reed or SERT then sent that plan to Commander Witt for consideration. Therefore, DJ-S has not met its burden of clearly showing Commander Witt considered DJ-S' ITT Plan yet failed to include it in the administrative record. Accordingly, the Court cannot compel the Coast Guard to produce DJ-S' ITT Plan as part of the administrative record. DJ-S' motion is **DENIED** insofar as it makes such a request.

### III. SUPSALV's Technical Analysis

DJ-S alleges that Commander Witt admitted during his deposition that he considered SUPSALV's technical analysis of both DJ-S' LOI Plan and T&T's Plan in making his deviation decision. Dkt. No. 57 at 6. Indeed, during his deposition, Commander Witt testified that he considered such documents from SUPSALV. Witt Depo. 147:19-22, 197:1-6. Despite Witt's consideration of these documents, they were omitted from the administrative record produced by the Coast Guard on March 3, 2020. Upon notice of their omission, the Coast Guard further completed the record by adding SUPSALV's review of DJ-S' LOI plan to the administrative record on March 13, 2020. Dkt. No. 69-3.

Despite doing so, the administrative record was still without SUPSALV's review of T&T's Plan. To remedy this discrepancy, the

Coast Guard directed its Chief of the Office of Claims and Litigation, Brian Judge, to conduct another review of the Coast Guard Marine Safety Unit Savannah's internal electronic record database for "SUPSALV's technical review of salvage plans for the M/V GOLDEN RAY that were considered, either directly or indirectly, in connection with the approved deviation from the vessel's NTVRP." Dkt. No. 90-1 ¶¶ 1, 2. Upon review, Mr. Judge found an email from Vince Jarecki, a SUPSALV Salvage Naval Architect, replying to SERT's review of T&T's Plan that he sent to Commander Witt (among others). Dkt. No. 90-1 at 5. Timestamped at 3:59:59 PM on December 21, 2019, the email outlines SUPSALV's technical review of T&T's plan, including, "[SUPSALV's] primary comment that, quite simply, there is a lot more engineering to be done and reviewed prior to execution and that while this plan has the potential for schedule and execution gains the risks are also higher." Id. The Coast Guard has no other SUPSALV documents related to the T&T Plan, but confirmed with SERT officials that "SERT and SUPSALV personnel reviewed the T&T Salvage wreck removal plan together in Brunswick[, Georgia] and that the December 19, 2019 SERT e-mail contained their combined comments" on T&T's Plan. Id. ¶¶ 2-3.

The administrative record is comprised of the documents that were before the decision maker at the time he made his decision. Overton Park, 401 U.S. at 415-16. Thus, any documents that came into existence after Commander Witt made his deviation decision on

December 21, 2019 are not part of the administrative record. Mr. Judge states that Mr. Jarecki's email "came after" Commander Witt approved the deviation request earlier that day. Id. ¶ 3. Accordingly, DJ-S' request that it be included in the administrative record is **DENIED**.

IV. **Weekly Operational Summaries**

DJ-S requests the "weekly summaries regarding the salvage and wreck removal process" that Commander Witt "prepared" and "shared with others." Dkt. No. 57 at 6. They were not provided as part of the administrative record. Nonetheless, the Coast Guard produced the weekly summaries to the Court and to DJ-S for review. Dkt. No. 73-1. As Commander Witt testified, he, or someone on his staff, prepared the weekly summaries for Coast Guard leadership to ensure it "had an understanding of the events of the prior week," including "finalizing a salvage plan" and, ultimately, deviating from the NTVRP, although they mostly contained "operational updates." Witt Depo. 223:20-224:9.

Importantly, the record before the agency when it made its decision is not "every scrap of paper" produced by the agency leading up to the decision. TOMAC v. Norton, 193 F. Supp. 2d 182, 195 (D.D.C. 2002). Instead, it consists of documents "that [were] before the [decision maker] at the time he made his decision." Overton Park, 401 U.S. at 415-16. It is not enough for a movant to "simply assert that the documents are relevant, were before the

agency at the time it made its decision and were inadequately considered." Pac. Shores, 448 F. Supp. 2d at 6 (punctuation omitted). Additionally, "internal memoranda" are generally considered deliberative materials and, as such, are rarely included in the administrative record. Norris & Hirshberg v. SEC, 163 F.2d 689, 693 (D.C. Cir. 1947); see Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp., 376 F.3d 1270, 1278 (11th Cir. 2004) (ruling against disclosure of deliberative materials in a FOIA case because agencies should not be "forced to operate in a fish bowl"). That said, if the deliberative materials contain "factual information not otherwise in the record," the portions of the deliberative materials containing those facts should be included in the administrative record. National Courier Ass'n v. Bd. of Governors, 516 F.2d 1229, 1242 (D.C. Cir. 1975).

Here, the Coast Guard has produced the weekly summary reports for the M/V GOLDEN RAY response. Dkt. No. 73-1. After review of these records, it is evident that the weekly summaries contain some facts regarding the incident and response to it; however, none of those facts are exclusively contained within the weekly summaries. As deliberative materials that contain facts located elsewhere in the administrative record, the Court declines to compel the Coast Guard to complete the administrative record by including the weekly summaries. To the extent DJ-S' motion requests

the Coast Guard complete the record with these documents, it is **DENIED**.

V. **Various Communications Withheld**

DJ-S alleges Commander Witt withheld numerous writings and communications "regarding the salvage and wreck removal process," including emails to and from DJ-S and the Owner's "P&I Club," the North of England Protection & Indemnity Association Limited. Dkt. No. 57 at 7. To the extent this request is for documents beyond the twelve documents expressly mentioned in DJ-S' motion, DJ-S' general allegation that Commander Witt "withheld a great deal of correspondence and communication regarding the salvage and wreck removal process" lacks the required specificity to be successful. Id. at 7. In so far as DJ-S' motion requests this Court to compel the Coast Guard to complete the administrative record by including these unidentified communications, DJ-S' motion is **DENIED**.

The Court also denies DJ-S' motion insofar as it requests this Court to compel the Coast Guard to produce "twelve (12) documents," later reduced to eight (8) documents, dkt. no. 88 ¶ 5, it believes necessarily complete the administrative record.[8] Again, the administrative record is comprised of the documents that were before the decision maker at the time he made his decision. Overton Park, 401 U.S. at 415-16. Thus, any documents that came into

---

[8] Again, this category of documents includes dkt. nos. 21-1, 21-2, 21-3, 21-4, 21-5, 21-6, 21-7, and 21-12. Dkt. No. 57 at 1; see Dkt. No. 88 ¶ 5.

AO 72A
Rev. 8/82

14

existence after Commander Witt made his deviation decision on December 21, 2019 are not part of the administrative record. Those documents include dkt. nos. 21-1 (Feb. 21, 2020), 21-4 (Dec. 22, 2019), 21-5 (Dec. 23, 2019), 21-6 (Jan. 7, 2020), 21-7 (Dec. 24, 2019), and 21-12 (Jan. 17-Feb. 24, 2020).

The remaining documents, dkt. nos. 21-2 (Nov. 15, 2019) and 21-3 (Nov. 20, 2019), although dated prior to Commander Witt's deviation decision, are also not part of the administrative record. These two documents are emails between DJ-S' marketing and sales manager, Richard Fredericks, and Coast Guard Rear Admiral Douglas Fears. Commander Witt is not copied on any of the emails, and DJ-S does not present any evidence that Commander Witt ever considered them, either directly or indirectly, in making his deviation decision. Instead, DJ-S speculates that since these emails were with and between the "major players" of the response, Commander Witt "obviously consider them." Dkt. No. 57 at 7. It is not enough for DJ-S to "simply assert that the documents are relevant, were before the agency at the time it made its decision and were inadequately considered." Pac. Shores, 448 F. Supp. 2d at 6. DJ-S must show more to succeed; it must strongly show that Commander Witt considered these documents. It has not. Accordingly, DJ-S' motion—in so far as it seeks to complete the administrative record with these documents—is **DENIED**.

## VI. The Coast Guard's Disciplinary Records.

DJ-S alleges that Commander Witt, through his attorney, "withheld information demonstrating" disciplinary action was taken against him, or others, in connection with the Golden Ray response. Dkt. No. 57 at 7. DJ-S admits that such records are beyond the scope of the administrative record. Id. As such, the Court construes DJ-S' request that the Court consider these extra-record materials in its review of Commander Witt's decision to be a request to supplement the record. Supplementation of the record with extra-record material requires—in addition to a clear showing that the record is incomplete—a "strong showing of bad faith or improper behavior by the agency" while compiling the administrative record. See Alabama-Tombigbee Rivers Coal. v. Kempthorne, 477 F.3d 1250, 1262 (11th Cir. 2007) (quoting Overton Park, 401 U.S. at 420). Here, DJ-S did not clearly or specifically show how—without these personnel records—the administrative record does not tell the full story of Commander Witt's deviation decision and rationale. Instead, DJ-S merely claims that if Commander Witt or others "were disciplined prior to the deviation decision, that could have effected [his] decision." Dkt. No. 57 at 7.

Likewise, DJ-S claims that the Coast Guard acted in bad faith while compiling the record falls short. DJ-S supports its bad faith allegation by citing the Coast Guard's subsequent completion and recertification of the administrative record on March 6, 2020 (dkt.

nos. 52-1, 3) and March 13, 2020 (dkt. nos. 69-3, 4). Dkt. No. 70 at 1-4. An agency taking steps to complete the administrative record upon notice that it omitted a document is not evidence of bad faith. Indeed, "[i]t would be unreasonable to expect even the most exhaustive search to uncover *every* responsive file" that could be part of the administrative record. Meeropol v. Meese, 790 F.2d 942, 953 (D.C. Cir. 1986) (emphasis in original). Instead, "what is expected of a law-abiding agency is that it admit and correct error when error is revealed." Id.

Here, the Court ordered the Coast Guard to produce the administrative record in five days. See Dkt. No. 33. Given the brief amount of time this Court gave the Coast Guard to produce the administrative record, it is not unreasonable that the Coast Guard accidentally omitted the few documents it did. Upon notice that it omitted the SUPSALV documents Commander Witt relied upon in making his deviation decision, the Coast Guard further completed the record by adding them to the administrative record (as it did with the SERT documents and risk registers). Dkt. No. 69-3 (SUPSALV documents); Dkt. No. 52-3 (SERT documents and risk registers). Then, in an attached affidavit, the Coast Guard explained the error and recertified the record. Dkt. No. 69-4 (adding SUPSALV documents); Dkt. No. 52-1 (adding SERT documents and risk registers). This suggests "a stronger, not weaker," basis for accepting the integrity of the agency's search. Meeropol, 790 F.2d

AO 72A
(Rev. 8/82)

17

at 953. Without a clear showing that the administrative record is incomplete without the Coast Guard's disciplinary files, and without concrete evidence that the Coast Guard acted in bad faith, DJ-S' request to allow the extra-record discovery of the Coast Guard's personnel records for those members involved in the response to the M/V GOLDEN RAY incident response is **DENIED**.[9]

**VII. DJ-S' Request for a Privilege Log**

Finally, DJ-S requests that this Court order the Coast Guard to produce a privilege log of the Coast Guard's "deliberative materials" omitted from the administrative record. Deliberative materials are excluded from the administrative record for two reasons. First, judicial review is based on the agency's stated justification, "not the predecisional process that led up to the final, articulated decision." Ad Hoc Metals Coal v. EPA, 227 F. Supp. 2d 134, 143 (D.C. Cir. 2002). Second, excluding deliberative materials from the administrative record "protects the integrity of the decision making process," Jordan v. United States Dept. of Justice, 591 F.2d 753, 772 (D.C. Cir. 1978), disapproved of on other grounds by, Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C. Cir. 1981), "prevents injury to the quality of agency decisions," NLRB v. Sears, Boebuck & Co., 421 U.S. 132,

---

[9] Nonetheless, the Coast Guard provided the Court all existing personnel documents related to the M/V GOLDEN RAY response. The Court reviewed those documents *in camera*. Nothing in those documents justifies their consideration in this case.

150-52 (1975), and encourages frank discussions only made possible without the knowledge of judicial oversight. See Nat'l R.R. Passenger Corp., 376 F.3d at 1278 (ruling against disclosure of deliberative materials in a FOIA case because agencies should not be "forced to operate in a fish bowl"). In other words, "[t]o require the inclusion in an agency record of documents reflecting internal agency deliberations could hinder candid and creative exchanges regarding proposed decisions and alternatives, which might, because of the chilling effect on open discussion within agencies, lead to an overall decrease in the quality of decisions." Ad hoc Metals Coal., 277 F. Supp. at 143. Therefore, an agency need not include deliberative and predecisional material in the administrative record. In re Subpoena Duces Tecum, 156 F.3d 1279, 1279 (D.C. Cir. 1998).

Moreover, irrelevant material is not discoverable. Fed. R. Civ. P. 26(b)(1). Therefore, a privilege log is not required. As Judge Royce Lamberth explained in Nat'l Ass'n of Chain Drug Stores v. U.S. Dept. of Health & Human Services:

> As pre-decisional, deliberative documents are immaterial to the court's decision, they are not designated part of the administrative record that forms the basis of the court's decision . . . Since deliberative documents are not part of the administrative record, an agency that withholds these privileged documents is not required to produce a privilege log to describe the documents that have been withheld.

631 F. Supp. 2d 23, 27 (D.D.C. 2009). Simply put, under this reasoning, DJ-S is not entitled to a privilege log of the Coast Guard's deliberative documents because they are irrelevant to the Court's review of Commander Witt's deviation decision under the APA. Accordingly, the Court will not compel the Coast Guard to produce one. In this regard, DJ-S' motion is **DENIED**.

## CONCLUSION

For the above stated reasons, DJ-S' Motion to Compel, construed as a motion to complete and supplement the administrative record, is **DENIED**.

**SO ORDERED**, this 3rd day of April, 2020.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA